THE PEOPLE *ex rel.* MARK DENNIS CHARLES, Plaintiff-Appellee, *v.* WILLIAM C. TELFORD, Mayor, City of Springfield *et al.*, Defendants-Appellants.

Fourth District   No. 13644

Opinion filed May 23, 1977.—Rehearing denied June 23, 1977.

Richard W. Gunning, Assistant Corporation Counsel, of Springfield, for appellants.

Nelson Howarth, of Springfield, for appellee.

Mr. JUSTICE HUNT delivered the opinion of the court:

Mark Dennis Charles, plaintiff-appellee, was a probationary policeman for the City of Springfield, serving under Mayor William C. Telford and police chief William T. Hall, defendants-appellants herein. Charles was summarily discharged by Hall after serving over 11 months in this status. Thereafter, Charles filed a complaint for a writ of mandamus seeking reinstatement; the defendants answered, and each side filed motions for summary judgment; Charles' motion was allowed and the appellants' motion was denied.

Numerous issues are raised on appeal: the appropriateness of mandamus as a remedy, the sufficiency of the complaint, the constitutionality of a city ordinance extending the statutory period of six months' probation under the Civil Service Act to 12 months under home rule powers of the constitution of 1970, whether Charles was entitled to a formal hearing under State and Federal constitutions, whether Charles had exhausted administrative remedies available to him, and whether appellants had complied with section 10—1—14 of the Municipal Code (Ill. Rev. Stat. 1973, ch. 24, par. 10—1—14).

On August 30, 1973, Charles was appointed a probationary patrolman

by Mayor Telford. He served in that capacity until August 16, 1974, when he was interviewed by the police chief and orally advised that he was dismissed as a probationary patrolman based upon complaints of citizens and adverse reports of supervisory patrolmen. He subsequently received a letter from the mayor backdated to August 16, 1974. A statement of reasons for dismissal to the mayor by the police chief, also backdated to August 16, 1974, was prepared sometime before September 12, 1974. On some day subsequent to August 16, 1974, a personnel separation form was sent by city officials to the City of Springfield Civil Service Commission where it was received, marked "approved" and "8/19/74 R.E. Young, chrmn; by Martha Gardner, Sec'y." The personnel separation form contained no reasons for the dismissal except to refer to the section of the ordinance pertaining to probationary police officers. It was stipulated by the parties that the Civil Service Commission neither met before, at the time of, nor after the dismissal of appellee to consider his case or to give its consent to the mayor or chief of police for his dismissal.

■■ The instant appeal hinges on whether the city conformed to the requirement of the statute and ordinance applicable to the discharge of probationary employees. If they did not, mandamus is an appropriate remedy and all other issues raised need not be addressed. Section 10—1—14 provides, in part:

> "At or before the expiration of the period of probation, the head of the department or office in which a candidate is employed may, by and with the consent of the commission, discharge him upon assigning in writing his reason therefore to the commission. If he is not then discharged, his appointment shall be deemed complete."

The rule making power of the commission relating to discharges is found in section 10—1—5 (Ill. Rev. Stat. 1973, ch. 24, par. 10—1—5), which states:

> "The commission shall make rules to carry out the purposes of this Division I, and for examinations, appointments and removals in accordance with its provisions, and the commission may, from time to time, make changes in the original rules."

Pursuant to the above authority, the City of Springfield Civil Service Commission adopted a rule designated as section 9.05 which states that:

> "At any time during the working test period the appointing authority may remove an employee if, in the opinion of the appointing authority, the working test and the service rating indicates that such employee is unable or unwilling to perform his duties satisfactorily or that his habits and dependability do not merit his continuance in service. Upon such removal the

appointing authority shall immediately report to the Commission and to the employee removed, his action and the reason therefore."

Appellants cite both rule 9.05 and section 10—1—14 in arguing that the removal of a probationary employee is a discretionary act and that mandamus will not lie to review the performance of an official act involving the exercise of discretion. In addition, the City also argues that since rule 9.05 does not contain the requirement of section 10—1—14 within its terms, there is no obligation to comply with that section.

■■ ■ A rule adopted by an administrative agency must be in accordance with the statutory authority vested in such agency, must be reasonable, and must be adequately related to the purpose of the Act and neither arbitrary nor in contravention of any expressed statutory provision. (*People v. Kueper* (1969), 111 Ill. App. 2d 42, 249 N.E.2d 335.) Rule 9.05 may not be interpreted so as to contravene the express statutory requirements of section 10—1—14 for making effective a discharge of a probationer. Although the decision to discharge a probationary employee may be discretionary, once that decision has been made, the element of discretion is removed in the procedure to be followed to effectuate the discharge. The two things that are required by law to make the discharge of a probationer effective are the assignment of a reason therefore to the Commission and the consent of the Commission to the discharge. (*Rose v. Civil Service Com.* (1957), 14 Ill. App. 2d 337, 144 N.E.2d 768.) In *People ex rel. Vestuto v. O'Connor* (1953), 351 Ill. App. 539, 543-44, 115 N.E.2d 810, 812-13, the court held:

"We presume the 'consent' required under sec. 10 of the City Civil Service Act [presently section 10—1—14 of the Municipal Code] was intended as a check upon the arbitrary action of a department head. * * * The right to have his discharge consented to by the Commission was a substantial right of Vestuto.

The term consent implies an intellectual act giving assent [citation]. Consent implies a knowledge of the facts. We think that the knowledge needed for consent is that which the ordinary prudent person would require before giving assent to as serious a matter as the discharge of a probationary patrolman."

In *People ex rel. Weichern v. Smykal* (1956), 12 Ill. App. 2d 398, 139 N.E.2d 839, the court found that the probationary employee appeared before the Commission and its authorization to discharge was shown in the minutes of the Commission. The opinion further indicated that the action was taken by the Commission on the recommendation of the superiors of Weichern. A comparable proceeding was followed in *People ex rel. Heffernan v. Smykal* (1957), 13 Ill. App. 2d 342, 142 N.E.2d 133.

■■ In the case before us the parties have stipulated that neither the

police chief nor the mayor made any recommendations to the Civil Service Commission other than the notation on the personnel separation form, which stated:

> "The written charges for discharge are as follows: Section 9.05 ('Removal of Employee during Working Test Period'), of the Rules and Regulations of the Civil Service Commission."

The Commission had before it no statement of misconduct or failure of performance on the part of the probationary officer, never met to consider any complaints that might be referred to them by the appointing personnel, and simply had the secretary of the Commission endorse on the face of the Commission records the dismissal of the employee by the signing of the name of the chairman by his secretary. These steps did not conform with the procedure outlined in section 10—1—14 or the rules made pursuant thereto. Since the trial court's ruling may be affirmed on this ground, it is unnecessary to comment upon the other matters relied upon by appellants on appeal.

Accordingly, the decision of the trial court is affirmed.

Affirmed.

GREEN, P. J., and REARDON, J., concur.