**Darrell FARMER, Plaintiff–Appellant,**

v.

**Michael LANE, Doug Brown, Linda Williamson, Jay Delicandro, Rocco Biscaglia, and Reid Paxson, Defendants–Appellees.**

No. 87–3149.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 14, 1988.
Decided Dec. 14, 1988.

Dennis M. Fleming, Wahler Pecyna & Fleming, Chicago, Ill., for plaintiff-appellant.

Deborah L. Ahlstrand, Chicago, Ill., for defendants-appellees.

Before CUDAHY, RIPPLE and KANNE, Circuit Judges.

CUDAHY, Circuit Judge.

In this case Darrell Farmer, a probationary employee with the Illinois Department of Corrections (the "DOC"), attempts to assert an infringement of constitutionally-protected interests through a tangled web of procedural and state law problems. Farmer brings this action under 42 U.S.C. § 1983. He alleges that upon completion of his probationary period, he was wrongfully denied certification in retaliation for his decision to run for political office. Farmer claims that in taking this retaliatory action, the defendants violated his first amendment rights to freedom of speech and association, and his fourteenth amendment right to due process.

The district court granted defendants' motion to dismiss, holding (1) that Farmer was collaterally estopped from raising his substantive claims because they had already been litigated in a concurrent state proceeding, and (2) that Farmer could not invoke fourteenth amendment procedural protections because as a probationary employee he had no protectable property interest in continued employment. We differ somewhat from the district court in our recognition that Illinois has moved to extend property rights to some probationary employees. We nonetheless affirm, because Illinois law does not now recognize such rights in employees in Farmer's position.

## I.

### A.

On December 17, 1984, Farmer was hired as an Apprehension Specialist by the DOC. Farmer alleges that he received his job in return for his political support of defendant Linda Williamson (an Illinois State Representative), who interceded with defendant Jay Delicandro (a Governor's Aide "in charge of patronage") to get Farmer his job. Farmer then commenced a six-month probationary period.

The Illinois Administrative Code requires that probationary employees in Farmer's position receive two evaluations—one at the end of three months, and the other fifteen days before the end of the probationary period. Ill.Adm.Code tit. 80, § 302.270. Following his first evaluation, which was uniformly positive, Farmer was approached by defendant Rocco Biscaglia (Williamson's campaign manager) for additional financial contributions to Ms. Williamson's campaign. Farmer's complaint alleges that he turned Biscaglia down and publicly declared his intention to run against Ms. Williamson in the next election. A co-worker of Farmer's, defendant Reid Paxson, subsequently warned Farmer that he would lose his job if he did not withdraw his candidacy. Farmer did not withdraw.

At the close of the six-month probationary period, Farmer's supervisor drew up a second evaluation, rating Farmer positively and recommending certification. At this point, according to Farmer's complaint, defendants Michael Lane (the DOC Director) and Doug Brown (the DOC Deputy Director), acting at the behest of Williamson and Delicandro, ordered Farmer's supervisor to change his positive evaluations. When the supervisor refused, Brown ordered the secretary who typed up the forms to change Farmer's evaluation to show negative performance ratings and a negative recommendation as to certification. Farmer was denied certification and discharged from his job effective June 17, 1985.

Farmer attempted an immediate appeal to the Illinois Civil Service Commission (the "Commission"). After receiving his termination notice, Farmer had also mistakenly received notice that he had been certified. The Commission ruled that Farmer's certification was not effective, and that as a probationary employee Farmer was not entitled to a Commission hearing.

### B.

Farmer then initiated proceedings in state court, and on October 6, 1986, filed an amended complaint in four counts. The state court action named as defendants the Commission, the DOC, the Illinois Department of Central Management Services ("CMS"), and Richard McClure (the Director of CMS). The state trial court held a bench trial in October, 1987. *Farmer v. McClure*, No. 85 CH 6052 (Cir.Ct. of Cook Cty. Oct. 23, 1987) (*"Farmer I"*). Count I, which requested review of the Commission's decision that it lacked jurisdiction, was dismissed. The state court held for Farmer on Count II (requesting injunctive relief, reinstatement and back pay) and Count IV (requesting mandamus relief). It held for the defendants on Count III, which asserted that Farmer's discharge was in retaliation for political activity, in violation of the Illinois constitution, Illinois statutes and the first and fourteenth amendments of the U.S. Constitution. The state court's

order on these counts was stayed pending appeal to the Appellate Court of Illinois.

Because this case involves questions of collateral estoppel and res judicata, it is important to understand clearly the precise nature of the claims in the state court proceeding. Count I (dismissed) requested administrative review of the Illinois Civil Service Commission's decision. Count II (in Farmer's favor) alleged violations of personnel rules contained in the Illinois Administrative Code, and also asserted—without citing directly to any constitutional or statutory provision—that Farmer had been "denied liberty and property without due process." Plaintiff's Second Amended Complaint for Injunctive Relief and Administrative Review at 5, *Farmer I, reprinted in* Joint Appendix at A-3. In ruling on this count, the state court considered only violations of the Illinois rules and did not discuss any federal due process issues. Count IV (in Farmer's favor) alleged violations of the Illinois Administrative Code and of Farmer's union contract. Here the state court explicitly based its findings on the rules violations and not on the contract theory. Count III (against Farmer) was the only count to overtly raise federal constitutional issues, and it also asserted violations of Illinois statutes and the Illinois constitution. In finding against Farmer on the retaliation issue, the state court refused to limit its decision to McClure and the parties in the state court action. Thus, when plaintiff's counsel asked the state trial judge, "[J]ust for clarification purposes, because there is that matter that counsel eluded [sic] to in the Federal Court, your ruling on the political activities is directed solely toward McClure since McClure was the only part[y] before you, correct?" the judge responded:

I disagree. It was with respect to the agency people, too, because just the same as McClure is stuck with deficiencies in the rules that are made by agency people, ... if he [Farmer] could make out a case of political hiring or firing on the part of the employing agency, that McClure might very well be stuck with that if there was such a claim that could be made.

All I am saying here is that I don't find by a preponderance that he was hired for political reasons or by a preponderance that he was fired, that the conduct of Thomas or Brown or McClure was motivated by political purposes either. I just think it's wholly lacking in credible evidence on the issue of hiring or firing for political reasons.

Record at 17, *Farmer I, reprinted in* Joint Appendix at A–4. The court found it far more likely that Farmer's difficulties resulted from an unpleasant encounter between Farmer and defendant Lane, retaliation for which was more "personal" than "political." *Id.* at 18.

In June 1988, the Illinois Appellate Court affirmed, ruling that sovereign immunity did not bar relief, that the plaintiff had a cause of action for mandamus relief and that the plaintiff was entitled to relief because the agency was required by law to follow its stated procedures. *Farmer v. McClure and Tristano*, 172 Ill.App.3d 246, 122 Ill.Dec. 227, 526 N.E.2d 486 (1988) (*"Farmer II"*). The Appellate Court strongly affirmed the trial court's ruling that Farmer had a right to be evaluated according to the applicable Illinois procedures—a right not only to receive his evaluation according to the deadlines set by the Administrative Code but also to respond to his evaluation as provided in the Illinois evaluation forms. Defendants' petition for rehearing on this appeal has been denied, and they have indicated that they plan to appeal to the Illinois Supreme Court.

### C.

In June of 1987, Farmer had concurrently instituted a suit in the Northern District of Illinois. His complaint alleged that the defendants had, under color of state law, acted individually to deprive him of rights, privileges and immunities guaranteed by the United States Constitution "including but not limited to his right to free speech, his right to free political association, and his right not to be deprived of life, liberty, and property without due process." Plaintiff's Complaint at 3, *Farmer v. Lane,* No. 87 C 5079, (N.D.Ill. Dec. 14, 1987) (*"Farm-*

*er III"*), *reprinted in* Joint Appendix at A–1. Defendants moved to dismiss and the district court granted the motion. The court divided Farmer's complaint into procedural and substantive due process claims. It ruled that, because Farmer's substantive political retaliation claim had been fully litigated in state court, collateral estoppel applied to that part of his claim. However, the district court determined that because one of Farmer's procedural claims had been dismissed before consideration on the merits by the state court, Farmer was not collaterally estopped with respect to procedural due process. The court nevertheless proceeded to dismiss this claim "because plaintiff could have no reasonable expectation of continued employment." *Farmer III,* mem. op. at 3. Further, even if Farmer did have a property interest, the court concluded that he had received all the process that was due in the state court proceeding. Farmer appeals this ruling by the district court.

### II.

We are faced with two inquiries: (1) Do any of Farmer's federal claims survive collateral estoppel or res judicata after the initial state court action? and (2) If the procedural claim survives, does Farmer have a sufficient property interest to invoke due process protection?

### A.

The doctrines of collateral estoppel and res judicata are, of course, applicable in section 1983 cases. *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Res judicata bars relitigation by the same parties of issues that were raised, or could have been raised, in prior actions upon which a court of competent jurisdiction has rendered final judgment. *LaSalle Nat'l Bank of Chicago v. County of Du-Page,* 856 F.2d 925 (7th Cir.1988); *Torres v. Rebarchak,* 814 F.2d 1219 (7th Cir.1987); *Hagee v. City of Evanston,* 729 F.2d 510 (7th Cir.1984). Because Farmer's state court action named different defendants

than did his federal complaint, res judicata appears to be inapplicable here.[1]

However, collateral estoppel applies despite the difference in parties. This court has established the guidelines for collateral estoppel analysis under Illinois law:

> In general, collateral estoppel precludes relitigation of issues in a subsequent proceeding when (1) the party against whom the estoppel is asserted was a party to the prior adjudication, (2) the issues which form the basis of the estoppel were actually litigated and decided on the merits in the prior suit, (3) the resolution of the particular issues was necessary to the court's judgment, and (4) those issues are identical to issues raised in the subsequent suit.

*County of Cook v. MidCon Corp.,* 773 F.2d 892, 898 (7th Cir.1985); *see also Amoco Oil Co. v. Johnstone,* 856 F.2d 967 (7th Cir. 1988); *Whitley v. Seibel,* 676 F.2d 245, 248 & n. 1 (7th Cir.), *cert. denied,* 459 U.S. 942, 103 S.Ct. 254, 74 L.Ed.2d 198 (1982). In this suit collateral estoppel is asserted against Farmer, who was clearly a party to the earlier state suit.

The remaining elements of the collateral estoppel analysis all depend upon proper delineation of the issues involved in the state court proceeding. We analyze the prior state court action somewhat differently than did the district court. Farmer's Count I, which was dismissed, requested review of the Illinois Civil Service Commission's decision. This count did not raise federal due process questions; moreover, Farmer does not ask for further consideration of the Commission's decision in his federal complaint. The procedural violation alleged in Farmer's federal complaint is the improper handling of his performance evaluation and certification review, an issue addressed in Counts II–IV of his state court action.[2] Thus the fact that the state court dismissed Count I does not preserve Farmer's procedural due process claim. If Farmer's state complaint raised a federal procedural due process claim, it did so either in the somewhat cryptic allusion to "continuing denial of liberty and property without due process" in Count II, or in the broad invocation of the fourteenth amendment in Count III.

For collateral estoppel to apply, the issue in the current case must have been necessarily raised and decided in a previous action, and the issues in the two cases must be identical. The state trial judge did not interpret Count II as a federal due process claim, and so confined his ruling on that count to a consideration of state law violations. In ruling on Count III, which alleged violations of the first and fourteenth amendments as well as of state law, the judge considered only whether Farmer's certification decision was made for political reasons.

As the district court correctly concluded, Count III of Farmer's state complaint raised the same substantive issue as is raised in Farmer's federal first amendment claim. Resolution of the political retaliation claim was necessary to the state court's conclusion on Count III; the claim was squarely raised and decided; and the identical issue—retaliation for political activities—is involved in both cases. Thus collateral estoppel applies to the substantive claim. However, at no point did the state court consider whether the procedural

---

**1.** Farmer's state court action named the DOC, the Illinois Civil Service Commission, CMS and the director of CMS (McClure). His federal action named the director and deputy director of the DOC (Lane and Brown), an Illinois governor's aide (Delicandro), an Illinois state representative (Williamson) and her campaign manager (Biscaglia) and a co-worker of Farmer's (Paxson). Although arguably in a broad view both actions essentially name state employees, the federal action also lists Williamson's campaign manager, who was not under any possible definition a party to the state action. Thus res judicata does not seem applicable here, because this case is not confined, even under the broadest of definitions, to the same parties involved in the original suit or their privies. Nevertheless, we hold that Farmer's claims cannot prevail, even if not barred by res judicata.

**2.** This thrust is underscored by Farmer's assertion in his response to defendants' motion to dismiss that "[t]his action is not to review the decision to terminate [Farmer], but to determine if the procedure utilized by the Defendants violated [Farmer's] civil rights." Response to Motion to Dismiss at 5, *Farmer III.*

violations alleged in Farmer's complaint constituted an infringement of fourteenth amendment procedural due process protections. Consideration of state law procedural violations under Count II of the state claim does not exhaust the issues raised by a constitutional due process claim; the issues are not identical.[3] Farmer is therefore not estopped from asserting that the DOC's failure to follow its own procedures—that is, rules requiring a second evaluation within 15 days of the end of the probationary period and giving the employee a right to respond—infringed his constitutional procedural due process guarantees.

### B.

■ In order to assert a violation of the fourteenth amendment, Farmer must first demonstrate that he has a protectable property interest in his employment. *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). Property interests in employment may be created by express or implied contracts, municipal ordinances or state laws— including those "rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. Although we look to the procedural guarantees granted by contract, ordinance, statute or regulation in assessing whether a property interest exists, the right to those procedural guarantees is not itself a property right. *Shango v. Jurich,* 681 F.2d 1091, 1100 (7th Cir.1982); *Endicott v. Huddleston,* 644 F.2d 1208, 1214 (7th Cir. 1980); *Suckle v. Madison General Hospital,* 499 F.2d 1364, 1366 (7th Cir.1974); *see Geneva Towers Tenants Org. v. Federated Mortgage Inv.,* 504 F.2d 483, 493–96 (9th Cir.1974) (Hufstedler, J., dissenting). The adequacy of any claim of entitlement "must be decided by reference to state law." *Bishop,* 426 U.S. at 344, 96 S.Ct. at 2077.

The district court cites *Fontano v. City of Chicago,* 820 F.2d 213 (7th Cir.1987), in support of its ruling that "[t]he fact that plaintiff was afforded the right to object to the performance evaluations did not create a protectible property interest." *Farmer III,* mem. op. at 3. However, *Fontano* does not involve a "right to object to performance evaluations." The issue in *Fontano* was whether a probationary employee for the City of Chicago had any right to be evaluated at all. *Fontano,* 820 F.2d at 214.

The applicable personnel rules in *Fontano* provided that "a department head may discharge [a probationary employee] provided the department head notifies the Commissioner of Personnel in writing." *Id.* This provision seemed to indicate that probationary employees could be freely discharged without any stated reason or cause. However, an additional memorandum addressed to the plaintiff informed him that his work performance would be rated twice during the probationary period according to listed criteria. The court in *Fontano* adopted the finding of the lower court that these criteria were merely guidelines to help the City in evaluating probationary employees. *Id.* at 215. The *Fontano* court also gave weight to an additional personnel rule providing that "the performance ratings ... *may* be used as a basis for termination or retention of an employee on probation." *Id.* at 216. The court concluded that the City's regulations did not require performance evaluations at all— and certainly not negative performance evaluations, or an employee response to evaluations—as a prerequisite to discharge. *Id.*

---

**3.** Thus, in order to resolve the federal constitutional claim, the state court would have had to consider whether Farmer had a property interest in his employment, an issue the court never reached. Even if Farmer squarely raised a federal procedural due process claim in his complaint, the Supreme Court has indicated that collateral estoppel will not apply where the state court "fail[s] to even acknowledge the existence of the constitutional principle on which a litigant based his claim." *Allen v. McCurry,* 449 U.S. 90, 101, 101 S.Ct. 411, 418, 66 L.Ed.2d 308 (1980).

Thus Farmer's case is distinguishable from *Fontano*. First, *Fontano* did not involve an employee's right to respond to evaluations. The state court in *Farmer I* specifically found that Farmer had a right to respond:

> All these rules and this form all are geared toward an intelligent form of decisionmaking in government which is fair both to the employee and the employer.... It's designed to basically let employees know how they are doing ... and [this form] ... requires employee input, requires communication between the employer and the employee, all of which ultimately is designed to further intelligent decisionmaking in government....

Record at 7, *Farmer I.* The Illinois Appellate Court affirmed this finding, noting that "[p]laintiff possessed both a clear right and a vested interest" in having the evaluation-and-response procedure carried out correctly. *Farmer II,* 172 Ill.App.3d at 252, 122 Ill.Dec. at 502, 526 N.E.2d at 491. In Farmer's case, then, we have the benefit of a direct finding by the state court—not only that he had a right of response, but that this procedure was for his benefit as well as for the benefit of the state. By contrast, the *Fontano* court found that the procedures in question were for the benefit of the city government.

*Fontano* is also distinguishable because under the City's rules consideration of evaluations before certification was optional ("the performance ratings ... *may* be used"), whereas in Farmer's case Illinois Personnel Rules *require* that evaluations be considered. Ill.Admin.Code tit. 80, § 302.260 (1985) ("In determining whether or not to approve the discharge of such employee, the Director *shall* consider the employee's performance records.") (emphasis added). The plaintiff urges us to give considerable weight to the difference between "may" and "shall." Although the Supreme Court has given weight to just such a difference in determining whether protected constitutional interests exist, it has also required that there be a substantive predicate to such mandatory language. *Hewitt v. Helms,* 459 U.S. 460, 471–72, 103 S.Ct. 864, 871–72, 74 L.Ed.2d 675 (1983).[4]

We look to Illinois law to determine whether these distinctions between *Fontano* and Farmer's case are sufficient to indicate a property interest. The defendants cite *Powell v. Jones,* 56 Ill.2d 70, 305 N.E. 2d 166 (1973) for the proposition that Illinois requires "for cause" discharge in order to generate the expectation of continued employment deemed central to a property interest. *Powell,* however, deals with certified employees and does not directly govern probationary employees.[5] There are a number of Illinois cases dealing with the rights of probationary employees, *see, e.g., People ex rel. Charles v. Telford,* 48 Ill.App.3d 928, 6 Ill.Dec. 799, 363 N.E.2d 613 (1977) (state cannot discharge probationary employees without following own stated procedures); *People ex rel. Shelton v. City of Chicago,* 13 Ill.App.3d 729, 301 N.E.2d 162 (1973) (probationary employee not entitled to back salary for period of suspension), but only one of them deals

---

**4.** In *Hewitt,* the Court found that mandatory language in connection with a substantive predicate was a critical indicator of a liberty interest:

> [I]n this case the Commonwealth has gone beyond simple procedural guidelines. It has used language of an unmistakably mandatory character, requiring that certain procedures "shall," "will," or "must" be employed ... and that administrative segregation will not occur absent specified substantive predicates—viz. "the need for control," or "the threat of a serious disturbance." ... [W]e are persuaded that the repeated use of explicitly mandatory language in connection with requiring specific substantive predicates demands a conclusion that the State has created a protected liberty interest.

*Hewitt,* 459 U.S. at 471–72, 103 S.Ct. at 871. The substantive predicates discussed by the Court in this context are the functional equivalents of "for cause" language of some kind in the employment context. Although there is mandatory language in the Illinois Personnel Rules here, there is no adequate substantive predicate such as that found in the *Hewitt* case.

**5.** To the extent that the court in *Powell* does mention probationary or noncertified employees, it does not indicate that "for cause" considerations are inapplicable to them—indeed, apparently the opposite: "Any employee may be demoted for cause, but a certified employee is entitled to an appeal to the Civil Service Commission." 56 Ill.2d at 78, 305 N.E.2d at 170.

squarely with the issue of probationary employees' property rights in their jobs. *Lewis v. Hayes*, 152 Ill.App.3d 1020, 106 Ill.Dec. 102, 505 N.E.2d 408 (1987) (probationary police officer has property right sustaining section 1983 action).[6]

*Lewis* involved a probationary police officer who sued the Village of Bradley under section 1983 for failure to hire him as a full-fledged police officer in accordance with stated municipal rules and procedures. The court directly addressed the issue whether a probationary employee could have a property right in his employment, and concluded that he could. *Id.* at 1024, 106 Ill.Dec. at 105, 505 N.E.2d at 411 ("we hold that a protectable property interest existed in employment as a probationary police officer in the Village of Bradley."). The rules enacted in the Village of Bradley provided that "a probationary employee can be terminated if he is found incompetent or disqualified for the performance of his duties," and that termination can take place "by and with the consent of the Commission after the chief submits written reasons for the termination." *Id.* The court viewed these provisions as requiring "cause" before probationary employees could be dismissed, and held that once a municipality had afforded its employees such "greater protection" it was bound by its own rules. *Id.*

Although the procedures in the case before us are mandatory, and although they are arguably for the benefit of the employee as well as of the state, we cannot find in the Illinois personnel rules and forms the equivalent of the "for cause" language found in the *Lewis* case. That the employee is given an opportunity to respond does raise the level of protection beyond that provided by mere evaluations. However, there are in this case no requirements analogous to those in *Lewis* providing (1) that a probationary employee be dismissed if "incompetent" or "disqualified," and (2) that the Director must state a reason for his decision to dismiss or refuse to certify a probationary employee. It was these two requirements, taken together, that led the court in *Lewis* to find a protectable property interest in probationary employment. Thus, although we recognize that Illinois courts have under some circumstances found that probationary employees have property rights, there is no support in the case law for extending this right, absent a substantive requirement resembling the "for cause" language in *Lewis*. Illinois may be moving toward such an extension, but at present the Illinois cases would not support a constitutional entitlement in the case before us.

### III.

The district court therefore correctly held that the plaintiff is estopped from asserting his first amendment (political retaliation) claims, and that the procedural due process claims fail for lack of a legitimate claim of entitlement.

AFFIRMED.

---

6. Two other Illinois cases give some guidance, although they do not deal directly with probationary employees' property rights. In *Keefer v. Trizna*, 64 Ill.App.3d 844, 21 Ill.Dec. 602, 381 N.E.2d 1049 (1978), the Appellate Court briefly discussed the possible property right of a non-probationary deputy sheriff, and suggested that because employment was not "solely at the will of the employer," the case was distinguishable from *Bishop*. However, the court declined to decide the issue. In *Alberty v. Daniel*, 25 Ill. App.3d 291, 323 N.E.2d 110 (1974), the Appellate Court held that the plaintiff, a probationary employee, had a cause of action under § 1983 because of alleged racial discrimination in employment decisions, but did not rule on alleged due process violations. Instead, the court considered procedural infractions only as violations of state rules and regulations. However in a preliminary paragraph, the court refused to accept the defendant's argument that as a probationary employee plaintiff had no due process claim, and noted that "the courts of this State have recognized the rights of probationary employees not to be discharged except according to law." *Id.* at 296, 323 N.E.2d at 114.