**Demann WASHINGTON, Plaintiff,**

v.

**James CHRANS, et al., Defendants.**

**No. 87–2489.**

United States District Court, C.D. Illinois.

June 27, 1991.

Demann Washington, pro se.

Gary M. Griffin, Asst. Atty. Gen., Chicago, Ill., for defendants.

## ORDER

BAKER, Chief Judge.

The plaintiff, Demann Washington, is a prisoner in the Illinois Department of Corrections. Originally, Mr. Washington brought this case pursuant to 42 U.S.C. § 1983, claiming that the defendants, correction officials, violated his constitutional rights in the course of disciplinary proceedings on October 22, 1987 which resulted in the plaintiff's loss of good time credits.

On November 8, 1988, this court found that because the plaintiff sought restoration of good time credits as part of his relief, exhaustion of state remedies was required. *Hanson v. Henkel,* 791 F.2d 93 (7th Cir.1986). The court stayed the federal proceedings pending exhaustion. Pursuant to the order, the plaintiff filed a mandamus action in the Circuit Court of Livingston County. A final judgment was rendered by that court in favor of the defendants which was affirmed on appeal. This stay was continued until October 4, 1990 when the court was satisfied that the plaintiff had exhausted his state remedies.

## Discussion

The novel issue before the court is whether the state mandamus action bars the plaintiff's federal cause of action. The answer to this question depends on how the court construes the plaintiff's claims. Although the plaintiff's complaint was brought pursuant to 42 U.S.C. § 1983, this court determined that because the plaintiff raised constitutional issues relating to duration of his confinement, habeas requirements, including exhaustion applied. *Han-*

*son v. Heckel,* 791 F.2d 93 (7th Cir.1986). The plaintiff was sent back to state court to exhaust his state remedies. The preclusive effect of this state court action is what is at issue here.

The plaintiff has asked this court to construe his claim as a habeas claim but has also requested that this court allow him to proceed with his § 1983 claim for damages. The defendants argue that if this court treats the complaint as a § 1983 action, then all issues previously decided in the state court bar the instant action. Thus, the defendants argue that for damages purposes, there are only two possible remaining issues: (1) the plaintiff's claim that there were no minority members on the adjustment committee; and (2) the plaintiff's claim about conditions during lockdown.

On the other hand, the defendants argue that if the court construes this as a federal habeas action, then all the claims can be relitigated.

The first issue the court must address is the preclusive effect of the state court mandamus action on the plaintiff's § 1983 claims.

### Res Judicata and Collateral Estoppel

As required by the Constitution and the full faith and credit statute, U.S. Const. Art. IV, § 1; 28 U.S.C. § 1738, federal courts must give state court final judgments the same preclusive effect that those judgments would be given in the courts of the state where the judgment was rendered. 28 U.S.C. § 1738; *See also Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). The practical effect of § 1738 is to require federal courts to look to the rendering state's preclusion rules when deciding what preclusive effect to give a prior state court judgment. *Id.*

Under Illinois law, res judicata bars re-litigation by the same parties of the issues that were raised or could have been raised, in prior actions, upon which a court of competent jurisdiction has rendered final judgment. *LaSalle Nat'l Bank of Chicago*

*v. County of DuPage,* 856 F.2d 925 (7th Cir.1988).

Here, while it appears that the parties in the state action and the federal action are the same, the plaintiff names different defendants in each action.[1] Because the court is unclear whether the defendants are exactly the same, it will not decide the case on res judicata grounds but will instead proceed to the doctrine of collateral estoppel.

The Seventh Circuit has recently discussed Illinois' general principles of collateral estoppel. In *Farmer v. Lane,* 864 F.2d 473, (7th Cir.1988), the court stated:

> In general, collateral estoppel precludes re-litigation of issues in a subsequent proceeding when: (1) the party against whom the estoppel is asserted was a party to the prior adjudication, (2) the issues which form the basis of the estoppel were actually decided on the merits in the prior suit, (3) the resolution of the particular issues was necessary to the court's judgment, and (4) those issues were identical to issues raised in the subsequent suit.

*Id.* at 477 (citations omitted). For collateral estoppel to apply, the issues in the current case must have been raised and decided in an earlier action and the issues must be the same. *Id.*

The due process clause also imposes an "independent obligation on the federal court that applies 28 U.S.C. § 1738 to ensure that the plaintiff has had a full and fair opportunity to litigate the claims sought to be barred in the federal action." *Charles Koen & Associates v. City of Cairo,* 909 F.2d 992, 1000 (7th Cir.1990) (citing *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 480–481, 102 S.Ct. 1883, 1896–1897, 72 L.Ed.2d 262 (1982).

To apply the principles of collateral estoppel, a thorough examination of the state proceeding is necessary.

### *Plaintiff's § 1983 Claims*

■ In the plaintiff's state mandamus action, the circuit court addressed whether one inmate disciplinary report[2] which charged the plaintiff with violating various departmental regulations including assault, gang activity and conspiracy to commit murder violated the plaintiff's procedural due process rights and the department's own regulations.

The plaintiff's first claim was that he was unable to marshal facts and prepare his own defense[3] because the report failed to notify him of the dates and times of the alleged meetings and of any statements made by him at those meetings. The state court, applying federal law, found that the defendants met the minimum due process procedures required by the United States Supreme Court in *Wolff v. McDonnell,* 418 U.S. 539, 564, 94 S.Ct. 2963, 2978–2979, 41 L.Ed.2d 935 (1974). *Washington v. Lane,* (4th Dist.1989) at 3 [183 Ill.App. 1116, 145 Ill.Dec. 409, 556 N.E.2d 1311 (table)].

The plaintiff's second claim was that the department failed to follow its own departmental regulations in issuing its summary and that this summary failed to comport with minimum due process requirements. He claimed that the committee failed to specify what evidence in the report it relied upon in reaching its decision. He also claimed that the evidence was insufficient to support a finding of guilty.

The state court fully examined the report within the context of the regulations, *Washington* at 4–5, and held that the disciplinary report substantially complied with the rule. *Washington* at 4, 7. In determining that the report met minimal due

---

1. In the plaintiff's amended complaint, he names Defendants Chrans, Jordan and Sanders. The plaintiff's state court action names Michael Lane, and James Chrans as defendants.

2. The plaintiff was issued two disciplinary reports for separate, unrelated incidents which occurred on October 16, 1987. For reasons unknown to this court, the state court addressed only one disciplinary report.

3. The plaintiff had requested a continuance and asked to be allowed to take a polygraph test. Both of these requests were denied by the committee. Plaintiff also claims that he informed the committee that he would need the assistance of a staff member in order to prepare his defense and that he was denied the opportunity to testify in his own behalf.

process standards, the court analyzed the report under Supreme Court jurisprudence and under Seventh Circuit law. *Washington* at 6–7.

The plaintiff's third claim was that the investigator's report, standing alone, was insufficient to support the committee's determination of guilt. The State Court disagreed. Citing *Superintendent v. Hill*, 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985), the state court concluded that the evidence before the adjustment committee satisfied the "some evidence" requirement in *Hill* and was thus sufficient to meet the requirements of due process. The state court denied the plaintiff's request for relief on all grounds.

The plaintiff's federal action is similar, but not identical to the state action. In this federal action, the plaintiff raises the same due process claims about the disciplinary reports, but raises these claims with respect to both reports. Further, the plaintiff raises new claims about lock-down conditions at Pontiac and about the lack of minority members on the adjustment committee.

In response to the defendants' motion for summary judgment (docket # 46), the plaintiff summarizes his three federal claims as:[4]

(1) Lack of sufficient advance written notice.

(2) Lack of impartiality in the proceedings.[5]

(3) Insufficient statement of evidence relied upon in finding the plaintiff guilty.

In this suit, the defendants argue that the plaintiff should be barred by the doctrine of collateral estoppel from re-litigating all issues previously decided by the state court. The state court squarely addressed due process violations with respect to one inmate disciplinary report, but never addressed the issue with respect to the other. Thus, collateral estoppel would only bar the plaintiff from re-litigating the due process issue with respect to first disciplinary report. Violations relating to the second disciplinary report are a separate and distinct issue.

With respect to the first disciplinary report, the collateral estoppel requirements are met. Estoppel is asserted against Mr. Washington, who was clearly a party to the earlier state suit. The substance of the federal claims is identical to the claims brought in the state court action. The state court, in deciding these claims, applied federal law. The claims were raised and decided on the merits. Their resolution was necessary to the state court's final judgment.

Because the plaintiff had a "full and fair opportunity to litigate", *Kremer v. Chemical Constr. Corp.*, at 480–481, 102 S.Ct. at 1896, with respect to the first disciplinary report, collateral estoppel applies to this claim. The plaintiff is estopped from relitigating this issue in a § 1983 action.

The plaintiff is not, however, estopped from pursuing the claim regarding the second disciplinary report or the other two claims never presented to the state court.

■ Moreover, the plaintiff may pursue all his claims, whether previously litigated or not, in a habeas action. Collateral estoppel does not apply to habeas actions. *Preiser v. Rodriguez*, 411 U.S. 475, 496, 93 S.Ct. 1827, 1839–1840, 36 L.Ed.2d 439 (1973).

The court will first reach the merits of the due process claim regarding the second

---

**4.** Because the plaintiff's *pro se* complaint was filed so long ago, the court believes that the plaintiff's recent response provides the best summary of the plaintiff's claims. The plaintiff's amended complaint asserts these same claims.

**5.** Although couched in terms of "impartiality" this claim asserts that the committee failed to grant the plaintiff a continuance and did not allow him to marshal a defense. The plaintiff argues that these denials were irrational and

that the motive behind these denials is that the disciplinary officers were friends of the deceased. The plaintiff concludes that the committee summary contains no evidence to support the committee's findings of guilt.

The state court addressed these claims in their opinion. Because they found that these "denials" were not violative of department rules or of due process, they found them to be rational. Hence, they never had to reach the issue of improper motive.

disciplinary report and will then address the two newly raised § 1983 claims. The court will then proceed to the habeas case.

*Plaintiff's Remaining § 1983 Claims*

*Plaintiff's Second Disciplinary Report*

■ The plaintiff was written a second disciplinary report on October 17, 1987. This report was written by Correctional Officer Philip Mayer and it charged the plaintiff with violations of various departmental rules. The report charged that inmates were threatening Officer Mayer with broomsticks and light bulbs. The report stated:

> On the above time and date this officer was struck on the right side of his back with a 4–foot flourescent lightbulb by Res. (sic) Washington in cell 8–20 N.C.H. This officer then observed the majority of the Res. (sic) on 8 gallery wielding light bulbs and broom handles from there (sic) cells.

*See Defendants' Exh. E.*

The report also noted that Officer Flowers witnessed the incident and that Mr. Washington refused to sign the report.

Officer Mayer also wrote an incident report detailing his version of the occurrence.[6]

Officer Flowers wrote an incident report which said, in pertinent part:

> This CO then saw a long cell light bulb come out of a cell held by an unk (sic) inmate not allowing above CO to pass. The res. (sic) then struck the long light bulb against the fence.

*See Defendants' Exh. G.*

In their summary judgment motion, the defendants argue that the procedures used in conducting the prison disciplinary proceedings complied with the due process requirements set forth in *Wolff v. McDon-*

*nell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

In *Wolff,* the United States Supreme Court held that an inmate must receive the following: (1) advance written notice of the disciplinary charges at least 24 hours prior to the hearing; (2) an opportunity, when consistent with institutional safety and correctional goals to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. *Wolff* at 564–566, 94 S.Ct. at 2978–2979.

Addressing the first *Wolff* requirement, advance notice, the defendants argue that advance notice was given pursuant to § 504.30(c) of the Illinois Department of Correction rules which states:

> The Disciplinary Report must be fully completed. The reporting employee shall provide the following information to the extent known or available:
>
> (1) The name and register number of the committed person.
>
> (2) The place, time and date, of the offense.
>
> (3) The offense which the committed person is alleged to have committed.
>
> (4) A written statement of the conduct observed.
>
> (5) The names of all committed persons employees and visitors who were witnesses.
>
> (6) Location and/or disposition of any physical evidence, if known.
>
> (7) The signature of the reporting employee.

20 Ill.Adm.Code § 504.30(c) at 1961 (1985).

The disciplinary report in question complies with the above regulations. In fact, it contains all of the enumerated items. It was served on the plaintiff at 10 pm on October 17, 1987, approximately five (5)

---

**6.** This report stated:

> On the above time and date this officer finished racking 8 gal bars. While exiting the gallery Res. (sic) Washington asked where his personal property was. This officer said "all I can give you is sheets and a blanket." Res. Washington then struck this officer in the right side of his back with a flouresent (sic)

light bulb. At this time this officer called unit # 62 acting Sgt. Welker to 10.25 8–gal. Then the majority of the residents on 8–gallery took out all there (sic) light bulbs and broom handles and waited for the officer to come off the gallery. This officer waited for Capt. Staley. This officer didn't clean 8–gallery.

*See Defendants' Exh. F.*

days before the hearing. Because it contains all of the above enumerated items, it contains enough information to allow the plaintiff to "marshal the facts in his defense". *Wolff* at 564, 94 S.Ct. at 2978. Further, it was served on the plaintiff well in advance of the 24 hour notice requirement of *Wolff.* Therefore, it meets the minimum due process requirements set forth in *Wolff.*

■ The plaintiff appeared before the adjustment committee on October 22, 1987. According to the committee summary, the plaintiff denied hitting anybody with a light bulb. He said his light bulb has a cover on it that does not come off and that if the committee would ask some of the residents, they would tell them that the plaintiff did not do it. The committee found the plaintiff guilty and revoked 180 days of his good time, demoted him to C grade for 180 days and ordered him placed in segregation for 180 days. The committee's summary indicated that the committee reached its findings of guilt for the following reasons:

> Based upon Committee confirmation from the reporting employee stating that the report is true; res. (sic) positively identified by C/O Flowers and reporting employee; committee is satisfied the violation occurred (sic) as reported. Note: C/O Mayer received medical treatment at institution hospital.

*See Defendants' Exh. J.*

The Seventh Circuit has dealt with the constitutional adequacy of adjustment committee reports.[7] *Redding v. Fairman,* 717 F.2d 1105, 1114–1116 (7th Cir.), *cert. denied* 465 U.S. 1025, 104 S.Ct. 1282, 79 L.Ed.2d 685 (1984) and has stated that this issue is "not to be taken lightly." *Id.* at 1114. As the *Redding* court recognized:

> Prisoners enjoy privileges and rewards which can be taken away if they misbe-

have. When a prisoner loses the opportunity to shower daily, visit with other prisoners, use the library, watch television, and the visit the commissary, he has lost much ... Forfeiting good time credits is perhaps the most serious loss. Prisoners must thus be protected from arbitrary actions extinguishing their privileges.

*Redding* at 1116.

To protect these privileges, a written summary detailing the proceedings below is necessary. *Redding,* in discussing the importance of an adequately written summary, quoted the Supreme Court's pronouncement in *Wolff:*

> Written records of proceedings will thus protect the inmate against collateral consequences based on a misunderstanding of the nature of the original proceeding. Further, as to the disciplinary action itself, the provision for a written record helps to insure that administrators, faced with possible scrutiny by state officials and the public, and perhaps even the courts, where fundamental constitutional rights may have been abridged, will act fairly. Without written records, the inmate will be at a severe disadvantage in propounding hid own cause to or defending himself from others.

*Redding* at 1114. (quoting *Wolff* 418 U.S. at 565, 94 S.Ct. at 2979.)

In *Redding,* the court reviewed eighteen different adjustment committee summaries and found that none of them standing alone met the minimum due process requirements of *Wolff.*[8] *Redding* at 1115. For guidance the *Redding* court looked to *Chavis v. Rowe,* 643 F.2d 1281 (7th Cir.) *cert. denied sub nom., Boles v. Chavis,* 454 U.S. 907, 102 S.Ct. 415, 70 L.Ed.2d 225 (1981), and *Hayes v. Walker,* 555 F.2d 625

---

7. Moreover, § 504.80(k)(1) of the DOC rules, as set forth in the Code, states:

All evidence submitted, including all oral and written statements, shall be summarized in the written record prepared by the Committee. The Committee members shall specifically refer to the evidence which convinced them to decide the committed person did or did not commit the offense.

20 Ill.Adm.Code § 504.80(k)(1) at 1963 (1985).

8. Two of the eighteen summaries were "rescued" from constitutional inadequacy when they were evaluated as a whole by combining the sections "Record of Proceedings" with the sections "Basis for Decision/Evidence Relied Upon". *Redding* at 1115.

(7th Cir.) *cert. denied,* 434 U.S. 959, 98 S.Ct. 491, 54 L.Ed.2d 320 (1977).

In *Hayes,* the court stated that a "general finding," by merely incorporating the violation report and the special investigator's report "does not ensure that prison officials will act fairly. Nor will this finding protect against subsequent collateral consequences based on misunderstanding of the initial decision." *Hayes* at 633.

In *Chavis,* the statement was deemed inadequate because it "did not mention what evidence was relied on ... It gave no clear indication of why the reporting officer was to be believed rather than [the inmate], or [the victim whose testimony favored the inmate]. Further, it gave no reason for discounting the inmate's contradictory evidence." *Id.* at 1287.

The *Redding* court also emphasized the inmate's denial of the offense. In reviewing the summaries in which the inmate denied the charges or did not answer to them, the *Redding* court found that the summaries did not "provide a clue" as to why the committee "acted the way it did" *Id.* at 1117–1118. In other words, the summaries did not explain why the committee did not believe the inmate's version of the story.

The line between constitutional adequacy and inadequacy is a fine one. *Redding* at 1116. The summary in the instant case falls on the constitutionally inadequate side of the line. The instant summary makes a general finding and merely incorporates other reports. It does not state the evidence relied upon in making the determination of guilt. Even after reading the summary, one is at a loss to figure out why the inmate was found guilty.

The summary also says, incorrectly, that C/O Flowers "positively identified" the offending inmate. All reports in the case clearly say the C/O Flowers never saw the offender.

Most importantly, the summary does not give any reasons for discrediting the plaintiff's version of the story. This court has "no clue as to why the committee acted the way it did." *Redding* at 1116. The court

finds that the above summary does not meet minimal due process requirements.

### Conditions During Lock-down

█ The plaintiff's second § 1983 claim is that: "Inmates confined in the [P]ontiac [C]orrectional [C]enter segregation unit are not allowed out of their cells except for showers, visits, or medical reasons." *See Amended Complaint* par. 31.

Although Mr. Washington may experience unpleasantness while living under these conditions, he has suffered no physical harm as a result of this confinement. The Seventh Circuit Court of Appeals has repeatedly held that temporary conditions such as those the plaintiff complains of does not amount to subjection to "cruel and unusual punishment." *See for example, Caldwell v. Miller,* 790 F.2d 589, 601 (7th Cir.1990) ("The Constitution does not mandate that prisons be comfortable and prisons which house persons convicted of serious crimes and who have demonstrated propensity to violence or escape cannot be free of discomfort."); *Harris v. Fleming,* 839 F.2d 1232, 1235–1236 (7th Cir.1988) (confinement in a "filthy, roach-infested" cell without articles of hygiene for five to ten days did not violate the Eighth Amendment); *Bono v. Saxbe,* 620 F.2d 609, 613 (7th Cir.1980) (generally harsher conditions in segregation unit do not violate the Eighth Amendment).

The plaintiff's claim about the conditions of confinement in the segregation unit during lockdown fails to state a claim under 42 U.S.C. § 1983.

### Composition of Adjustment Committee

The plaintiff's final § 1983 claim is that the adjustment committee was not composed of at least one minority member as required by DR.504.70(a)(2).

The adjustment committee was composed of three staff members. The defendant's exhibits show that all three of the committee members were black. *See Defendants' Exhs. C & J.* Thus, the plaintiff's claim that the committee was not composed of at least one minority member is totally without merit and clearly does not implicate the

denial of a constitutional right. The plaintiff's allegation fails to state a claim under 42 U.S.C. § 1983.

The plaintiff asserts a bit of a different argument in his response to the defendants' motion for summary judgment with respect to lack of impartiality. There, he asserts that the three black correctional employees who presided over his disciplinary hearing were close acquaintances of the deceased victim and thus were impartial. Because the court resolves the due process issue in favor of the plaintiff on other grounds, the court need not reach this issue.[9]

### Habeas Claims

Because the plaintiff requests that this court construe his complaint as stating a cause of action under both § 1983 and § 2254, the court will analyze the case as a habeas case. The defendants have stated in their most recent brief that if this court were to treat this case as a habeas case, than all claims could be relitigated on the basis of briefs already filed. The court has perused the defendants' briefs in search of procedural habeas arguments, but could find none. The defendants have not asserted any procedural default arguments, nor have they argued that the plaintiff has failed to exhaust his state remedies.

The defendants have told the court that it may decide the habeas case on the basis of the briefs already filed. The briefs do not assert any procedural default arguments, thus, the court deems these arguments waived. *Cole v. Young,* 817 F.2d 412, 415 (7th Cir.1987) (state waived procedural default argument by telling court to proceed with the merits of the case). *See also McCleskey v. Zant,* —— U.S. ——, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991); (state has the duty to raise cause and prejudice arguments).

Further, the defendants have not asserted any non-exhaustion argu-

ments. They have the duty to raise non-exhaustion arguments. *Granberry v. Greer,* 481 U.S. 129, 134, 107 S.Ct. 1671, 1675, 95 L.Ed.2d 119 (1987). Failure to exhaust state remedies does not deprive a court of jurisdiction to consider the merits of a habeas corpus application. *Id.* at 131, 107 S.Ct. at 1673–1674. In *Granberry,* the Supreme Court stated that when the state fails to raise the non-exhaustion defense, the court should take a "fresh look" at the issue, *Id.* at 134, 107 S.Ct. at 1675, to determine "whether the interest of comity and federalism will be better served by addressing the merits forthwith or by requiring a series of additional state and district court proceedings before reviewing the merits of the petitioner's claim." *Id.* at 134, 107 S.Ct. at 1675.

The plaintiff in this case, a *pro se* prisoner, has overcome extraordinary obstacles to reach this point in the litigation. Fairness, and the interests of comity and federalism, mandate that this court proceed directly to the merits of the habeas case and impose no further burdens or delays on either party. Thus, the court deems all procedural arguments waived and proceeds directly to the merits.

### The Plaintiff's Habeas Case

Federal courts can grant habeas relief only when there is a denial of rights given by federal or constitutional law. *United States v. Flannigan,* 884 F.2d 945, 952 (7th Cir.1989) (citing *Wainwright v. Goode,* 464 U.S. 78, 104 S.Ct. 378, 78 L.Ed.2d 187 (1983)). Thus, the court will address the plaintiff's claim that the prison failed to follow its own departmental rules only in the context that this failure constituted a violation of due process.

The plaintiff was served with an inmate disciplinary report on October 16, 1987,[10] which charged him with violating various departmental regulations including assault, gang activity, and the state law of conspir-

---

**9.** The court notes that this issue concerns genuine issues of material fact and could not be resolved at the summary judgment stage of the proceedings.

**10.** Because this court has yet to independently analyze the second disciplinary report, the court will begin here.

acy to commit murder. *See Defendants' Exh. A.* The report stated:

> INMATE DEMANN WASHINGTON A71089 is to be charged with the above violations for his involvement of (sic) the MURDER of Unit Manager ROBERT Taylor that occurred in the South Cell House on September 3, 1987. WASHINGTON was identified as the Legal coordinator of the BLACK GANGSTER DISCIPLE organization located at the Pontiac C.C., did in fact attend meetings where plans were discussed about the attack of TAYLOR and the end result being the death of TAYLOR from this attack. Information attained during the investigation has revealed that WASHINGTON did in fact commit these acts and had attended these meetings during the months of July and August 1987 and held the position of the Black Gangster Disciple Organization during the meetings and at the time of the attack of Taylor. [F]or additional information contact the office of Bureau of Inspections and Audits Interanl (sic) Investigations and refer to case number 88 PON 041.

*See Defendants' Exh. A.*

■ The plaintiff claims that this report violates due process. He claims that he should have received more detailed notice of the charges against him. He asserts that this notice was so general that it didn't allow him to prepare a defense adequately. Specifically, he alleges that this report is insufficient because it fails to apprise him of the specific dates, times and places of the alleged crime and of the witnesses against him.

The defendants respond by saying that the disciplinary report was written, reviewed, and timely given pursuant to DR regulations. While it may be true that the reports were written pursuant to rules, this does not insure that the reports comply with these rules. Information required by § 504.30(c) of DOC rules was left out. Specifically, the plaintiff should have been informed who his accusers were, as well as the approximate times, dates and places of the alleged infractions.

Prisoners' constitutional rights must be balanced against the need for efficient and secure prisons. *Redding* at 1112. This court must weigh the benefit the prisoner might receive from this information against the cost to the prison of supplying this information.

Revealing witnesses to the accused in a murder or conspiracy case is risky business, especially in a prison setting. If this type of delicate information is revealed, the informants or witnesses might be intimidated or killed. While the accused may be able to prepare a better defense given this information, the costs to the institution are much too great. Here, the balance weighs against the prisoner.

Revealing the approximate times, dates and places to the prisoner commands a different result. The court can think of no good reason, safety or otherwise, to withhold this information from the accused. On the other hand, the cost to the accused is great. Without this information, the accused may not be able to "marshal facts in his defense". Asserting an alibi defense will be virtually impossible. An innocent man would not able to defend himself from these charges without more information.

Here, the cost to the accused is great and the competing prison interest, if any, is minimal. Thus, the balance weighs in the accused's favor. Because the report lacks these crucial items, the court finds the report constitutionally inadequate under *Wolff.*

Mr. Washington's second claim is that he was not able to present witnesses in his defense. Because of the resolution of the due process issues on other grounds, the court need not reach this issue. The court notes, however, that the plaintiff admitted, in a deposition, *See Defendants' Exh. M,* that he did not request any witnesses in advance of the hearing as required by administrative regulations. Because the plaintiff failed to comply with administrative regulations, the plaintiff's claim about witnesses is weak at best. *See Redding* at 1113.

The plaintiff appeared before the Adjustment Committee on October 22, 1987. Ac-

cording to the committee summary, the plaintiff denied his guilt. The committee found the plaintiff guilty and revoked 360 days of good time credits, demoted him to grade C for 360 days and placed him in segregation for 360 days.

The committee's summary indicates that it reached its finding of guilt for the following reasons:

> Based upon the statements by reporting employee and from investigative report that revealed that Washington A71089 was the legal coordinator of the Black Gangster Disciples at the time and did attend meetings that discuss (sic) the planning and attack of Robert Taylor, committee is satisfied violations did occur.

*See Defendants' Exh. C.*

The plaintiff claims that this summary fails to comport with minimum due process requirements.

The defendants argue that the above summary "extensively documents" the reasons for the committee's finding of guilty. The defendants argue that the committee states that its decision was based on the reporting employee's statements and on the investigative report. They argue that the findings and the reasons given fall well within the "some evidence" requirements of *Superintendent v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985).

To determine the constitutional adequacy of this summary, the court will examine this summary under *Wolff, Redding, Chavis, Hayes,* and *Hill.*

The summary does not state the evidence relied upon in determining Mr. Washington's guilt. Instead, it relies on general findings and conclusory statements of the type prohibited by *Chavis, Redding,* and *Hayes.* Rather than pointing out the essential facts upon which inferences were based, the committee merely makes reference to the disciplinary report and the special investigator's report. The summary also does not explain why the committee discounted the accused's claims of inno-

cence. Simply stated, the summary does not provide a reviewing court enough evidence to determine whether good time credits were properly revoked and thus, does not meet minimum due process requirements.

The plaintiff's other habeas claims are identical to the § 1983 claims raised and decided in this instant order. The plaintiff's claim about lock-down conditions fails to state a claim for habeas relief. To qualify for habeas relief, these conditions must violate the Eighth Amendment's prohibition against cruel and unusual punishment. For the reasons discussed above, the conditions do not violate the Eighth Amendment and thus, habeas relief is denied.

The plaintiff's claim that there were no minority members on the committee fails to state a claim under the equal protection clause of the Fourteenth Amendment because there were three minority members on the committee. Because there is no violation of the Fourteenth Amendment, habeas relief on this claim is denied.

The plaintiff's other claim concerning the impartiality of the committee members is actually a due process claim. Because the court grants habeas relief on the plaintiff's other due process claims, it will not reach this issue.

The analysis of the plaintiff's due process claim concerning the first disciplinary report is the same on habeas as it is for § 1983. The court's finding that the plaintiff's due process rights were violated with respect to the first disciplinary report stands both as to the plaintiff's § 1983 claims and as to the plaintiff's habeas claims. Thus, habeas relief will be granted with respect to both the first and second disciplinary report. IT IS THEREFORE ORDERED that the following § 1983 relief is ordered:

(1) Summary judgment in favor of the defendant as to conditions during lockdown is granted.

(2) Summary judgment in favor of the defendant as to the plaintiff's claim that

there were no minority members on the committee is granted.[11]

(3) Summary judgment in favor of the plaintiff as to the plaintiff's second disciplinary report is granted.

(4) A hearing on the issue of damages is set August 1, 1991 at 1:30.

(5) For the purposes of entry of judgment under F.R.Civ.P 58, this is not a final judgment. It will become final upon the entry of an order on damages

IT IS FURTHER ORDERED that the following habeas relief is granted:

(1) DOC shall conduct a rehearing within 120 days from the date of this order, on the inmate's first disciplinary report, or in the alternative, restore the plaintiff's 360 days of lost good time credits and demotion in grade.

(2) DOC shall conduct a rehearing within 120 days from the date of this order on the inmate's second disciplinary report, or in the alternative, restore the plaintiff's 180 days of lost good time credits and demotion in grade.

---

11. The court does not reach the plaintiff's claim concerning the impartiality of the three committee members.