847 F.2d 1229
 Fred FLEURY, Plaintiff-Appellant,
v.
Gary CLAYTON, et al., Defendants-Appellees.
 No. 87-2545.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 6, 1988.
Decided May 11, 1988.
 
 David L. Requa, Requa & Alexander, Springfield, Ill., for plaintiff-appellant.
 Valerie J. Peller, Asst. Atty. Gen., Chicago, Ill., for defendants-appellees.
 Before POSNER, FLAUM and EASTERBROOK, Circuit Judges.
 EASTERBROOK, Circuit Judge.
 
 
 1
 Professional discipline takes many forms, from private admonition to public censure to revocation of a license. In Illinois, as in most other states, the legislature has established the circumstances under which agencies may discipline members of the professions. The state's Department of Registration and Education regulates the activities of physicians.
 
 
 2
 The Department may revoke, suspend, place on probationary status, or take any other disciplinary action as the Department may deem proper with regard to the license [of a physician] ... upon any of the following grounds: ...
 
 
 3
 4. Gross or repeated malpractice resulting in serious injury or death of a patient;
 
 
 4
 5. Engaging in dishonorable, unethical or unprofessional conduct of a character likely to deceive, defraud or harm the public; ...
 
 
 5
 25. Professional incompetence as manifested by poor standards of care; ...
 
 
 6
 Ill.Rev.Stat. ch. 111 p 4433. One of Fred Fleury's patients complained to the Department that Dr. Fleury had mistreated him. After negotiating with an attorney for the state's Medical Disciplinary Board (a part of the Department), Fleury waived his statutory right to notice of charges and a hearing, and he consented to the entry of a censure. The Board agreed in exchange not to take sterner measures. After learning that the censure might place in jeopardy his right to practice in states other than Illinois-which grant reciprocity to physicians in good standing in their home states-Fleury filed this action under 42 U.S.C. Sec. 1983, seeking an order expunging the censure and an award of damages against all those involved in state proceedings.
 
 
 7
 Before filing an answer, the defendants moved to dismiss the complaint under FED.R.CIV.P. 12(b)(1) for lack of subject--matter jurisdiction. The only jurisdictional contention--other than the obvious argument based on the eleventh amendment, which everyone agrees bars an award of damages against the defendants in their "official" capacities--was:
 
 
 8
 The cause, while it purports to arise under the Constitution of the United States, is actually an action in contract governed by state law and is not brought within the jurisdiction of a federal court by 42 U.S.C. Sec. 1983.
 
 
 9
 The district court referred the motion to a magistrate, who must have found this "contract" argument inscrutable (as do we); he treated the motion as what it should have been, one contending that the complaint fails to state a claim on which relief may be granted. The magistrate recommended that the district court deny the motion, save to the extent it concerned official-capacity damages. The district court, however, dismissed the complaint under Rule 12(b)(6), reasoning that a censure does not prevent the physician from practicing medicine and therefore does not deprive him of "liberty" or "property", so that the Due Process Clause of the fourteenth amendment does not apply. 664 F.Supp. 1224.
 
 
 10
 From one perspective this is an easy case. The state did not exclude Fleury from his chosen profession. He may practice as before, so he did not lose the "liberty" of occupational choice. See, e.g., Perry v. FBI, 781 F.2d 1294, 1302 (7th Cir.1986) (en banc); Goulding v. Feinglass, 811 F.2d 1099, 1103 (7th Cir.1987); Bigby v. City of Chicago, 766 F.2d 1053 (7th Cir.1985). The censure may be defamatory, but the Due Process Clause does not secure persons against libel by the pens of public officials. Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Because Illinois did not restrict Fleury's ability to practice, we do not have the stigma-plus-termination that might activate the Due Process Clause on the approach of Owen v. City of Independence, 445 U.S. 622, 633-34 n. 13, 100 S.Ct. 1398, 1406-07 n. 13, 63 L.Ed.2d 673 (1980); see also Codd v. Velger, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977). If Illinois did not furnish Fleury the process its statutes require before imposing professional discipline, this is a matter of state rather than federal law. There is neither a "liberty" nor a "property" interest in procedures themselves, Olim v. Wakinekona, 461 U.S. 238, 248-51, 103 S.Ct. 1741, 1747-49, 75 L.Ed.2d 813 (1983); Hewitt v. Helms, 459 U.S. 460, 471, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983); Szabo Food Service, Inc. v. Canteen Corp., 823 F.2d 1073, 1081 (7th Cir.1987); Shango v. Jurich, 681 F.2d 1091, 1100-01 (7th Cir.1982), and a violation of state law is not a violation of the Constitution. Snowden v. Hughes, 321 U.S. 1, 11, 64 S.Ct. 397, 402, 88 L.Ed. 497 (1944). And if the censure in Illinois should lead to unpleasant consequences elsewhere, Fleury must protest to the other states. The Due Process Clause applies only to the extent a state "deprive[s]" a person of liberty or property; if Wisconsin should suspend Fleury's privileges on the basis of the censure in Illinois, then Wisconsin rather than Illinois would be "depriv[ing]" Fleury of something. If Wisconsin had taken adverse action against the persons on Kentucky's list of "active shoplifters" in Paul v. Davis, Wisconsin rather than Kentucky would have had to supply any process that is due. See Margoles v. Tormey, 643 F.2d 1292, 1299 (7th Cir.1981).
 
 
 11
 These conclusions accord with the fact that a censure is speech. The speaker states that in his opinion the subject has made an error of judgment, one that deserves condemnation but no other sanction. We do not ordinarily think of speech as something to be preceded by due process; we say instead that speech may answer speech. There is no profound difference between the assertion on a public flyer that someone is an "active shoplifter" and the statement in a book of official records that a physician is a bad doctor. The target can reply; any residual injury may be trivial; and if the statement is in error, the state courts are open. Illinois offered Fleury the opportunity for judicial review of the censure (or any more serious penalty he might have received had he chosen to contest the allegations against him). Cf. Hudson v. Palmer, 468 U.S. 517, 530-36, 104 S.Ct. 3194, 3202-05, 82 L.Ed.2d 393 (1984); Ingraham v. Wright, 430 U.S. 651, 674-82, 97 S.Ct. 1401, 1414-18, 51 L.Ed.2d 711 (1977). There is no good reason to treat as a constitutional wrong every error in the administration of state discipline, and to the extent the state offers its residents full procedural safeguards backed up by judicial review there is no good reason to treat their omission in a particular instance as a constitutional case.
 
 
 12
 Nonetheless, this conclusion--logical though it seems to us--is foreclosed by authority. The Supreme Court's current view of the Due Process Clause is that a legitimate claim of entitlement, a right to a particular decision reached by applying rules to facts, is "property". E.g., Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); Miller v. Henman, 804 F.2d 421 (7th Cir.1986). The great weight of a loss does not amount to property if there is no legitimate claim of entitlement, Meachum v. Fano, 427 U.S. 215, 225-29, 96 S.Ct. 2532, 2538-41, 49 L.Ed.2d 451 (1976); the slight weight of a loss does not eliminate the property interest if there is a legitimate claim of entitlement. E.g., Hewitt v. Helms; Memphis Light, Gas & Water Division v. Craft, 436 U.S. 1, 14-15 & n. 15, 98 S.Ct. 1554, 1562-63 & n. 15, 56 L.Ed.2d 30 (1978); Goss v. Lopez, 419 U.S. 565, 575-76, 95 S.Ct. 729, 736-37, 42 L.Ed.2d 725 (1975). A smallish interest means only that the process "due" is correspondingly informal. See Goss and, e.g., Mathews v. Eldridge, 424 U.S. 319, 332-35, 96 S.Ct. 893, 901-03, 47 L.Ed.2d 18 (1976). Roth and subsequent cases have divorced the identification of "property" from the "weight" of the interest. There must be "some kind of hearing" under Goss provided there is an entitlement of more than de minimis stature. For any property interest, the Due Process Clause prescribes the procedural minima without regard to the procedures provided by the statute creating that interest. Cleveland Board of Education v. Loudermill, 470 U.S. 532, 539-41, 105 S.Ct. 1487, 1491-93, 84 L.Ed.2d 494 (1985). One could break this chain of reasoning at many steps-many Justices, in many dissenting opinions, have done so-but the job of an inferior federal court is to enforce prevailing doctrine.
 
 
 13
 Just as the regulations in Hewitt established criteria for putting prisoners in segregation (and therefore created "property"), so Ill.Rev.Stat. ch. 111 p 4433 establishes criteria for professional discipline and therefore creates a "property" interest in a blemish-free license to practice medicine. The regulations issued under p 4433 are more open-ended than the statute itself, for they say that grounds of discipline shall "include, but not be limited to" enumerated items. 68 Ill.Adm.Code Sec. 1290.35. Cases such as Board of Pardons v. Allen, --- U.S. ----, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987), show, however, that the inclusion of elastic items in a list of criteria does not destroy a property interest. Most systems of professional regulation, like the law of torts, have plasticity to them, because their drafters despair of cataloging all possible wrongs. A program anticipating evolution in the spirit of the common law is not the equivalent of no standards at all. See Parker v. Levy, 417 U.S. 733, 752-55, 94 S.Ct. 2547, 2559-61, 41 L.Ed.2d 439 (1974); Civil Service Commission v. Letter Carriers, 413 U.S. 548, 571-80, 93 S.Ct. 2880, 2893-98, 37 L.Ed.2d 796 (1973). If the regulations took back the substantive criteria of the statute, leaving the Department with unfettered discretion to censure on any ground it chose, that would eliminate any property interest in a "clean" license. See Miller v. Henman, 804 F.2d at 424-26. The state does not suggest that the regulations have this effect, so we shall take the statute at face value, with the understanding that the construction of state law ultimately is a question for the state to resolve. Huggins v. Isenbarger, 798 F.2d 203, 207-10 (7th Cir.1986) (concurring opinion). Paragraph 4433 has criteria; these criteria establish a property interest; so the Due Process Clause requires "some kind of hearing" unless the interest is de minimis.
 
 
 14
 We have so far assimilated censure to libel. Both are speech, but censure is a statement by a governmental entity and may preclude its subject from denying, in a future proceeding, that he committed the wrong ascribed to him. If Fleury again is the target of a complaint, the censure may count in the lists against him. If this should happen, the stakes are more than de minimis. The state does not suggest that Fleury would be free to relitigate the propriety of the censure or contest the existence of the incident that led to its entry. Libel of the sort encountered in Paul v. Davis, by contrast, is the view of the speaker alone; the government may be indifferent to it or may repudiate it when the time comes. We suppose that if the Governor of Illinois called a press conference to denounce Fleury as a bad doctor or fair-weather Republican, Fleury could call his own press conference or file a libel suit but would not have a constitutional remedy, cf. Colaizzi v. Walker, 812 F.2d 304, 306-08 (7th Cir.1987); yet if the Governor (or the Chief Justice of Illinois) should send Fleury a document "convicting" him of murdering a patient but imposing no sentence, we would have a much different problem. The formality enhances the seriousness of the act regardless of the gravity of the charge.
 
 
 15
 This may be why the Supreme Court has reviewed decisions censuring or reprimanding professionals, treating these rebukes as no less serious than fines. E.g., Zauderer v. Officer of Disciplinary Counsel, 471 U.S. 626, 636 n. 6, 105 S.Ct. 2265, 2274 n. 6, 85 L.Ed.2d 652 (1985). None of the Justices has suggested that censure is a trivial sanction; none has relied on Paul v. Davis to conclude that states may mete out censures as they please. Other courts have followed this lead. For example, Gardiner v. A.H. Robbins Co., 747 F.2d 1180, 1190-94 (8th Cir.1984), treats a federal judge's derogatory statement, entered of record, as equivalent to a penalty that must be preceded by due process of law. But see Chaudhry v. Prince George's County, 626 F.Supp. 448, 454 (D.Md.1985), equating censure with libel.
 
 
 16
 We conclude that a censure of a physician in Illinois deprives the physician of part of the property interest in his license to practice--both because Illinois has created a legitimate claim of entitlement to a "clean" license and because the formal censure, designed to deter repetition of the conduct in question, may produce legal consequences in Illinois. We therefore remand the case for further proceedings. This does not, however, imply that Fleury's suit will survive the next motion under Rule 12(b)(6). His complaint, the factual allegations of which we must accept, alleges that the Board's attorney threatened the revocation or suspension of his license unless he consented to censure, and that the attorney did not inform him of his procedural rights under state law. Yet an overbearing attorney does not violate the Due Process Clause by stressing the grave consequences that may attend failure to bargain. Cf. Bordenkircher v. Hayes, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978); Mabry v. Johnson, 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984).
 
 
 17
 The opportunity for a hearing is due process of law. If Fleury did not like the attorney's offer, he had only to stand on his rights; if he thought that the Board would disregard the evidence, he still had to make his record and obtain review in state court if his fears should be realized. An attorney need not inform the adverse party of his procedural rights. The rules of an agency must be knowable, see Cosby v. Ward, 843 F.2d 967, 984-85 (7th Cir.1988), but they need not be known; those who neglect to learn their rights have only themselves to blame. Cf. Gardebring v. Jenkins, --- U.S. ----, 108 S.Ct. 1306, 99 L.Ed.2d 515 (1988) (no need to notify welfare recipients of important changes in the terms of the program). Fleury is not indigent, and there is at all events no right to appointed counsel or other free legal advice in civil litigation, let alone in civil administrative proceedings. See Texaco, Inc. v. Short, 454 U.S. 516, 531-33, 536-37, 102 S.Ct. 781, 795-96, 70 L.Ed.2d 738 (1982); Parham v. J.R., 442 U.S. 584, 608-09, 99 S.Ct. 2493, 2507-08, 61 L.Ed.2d 101 (1979); cf. Pennsylvania v. Finley, --- U.S. ----, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987). The Due Process Clause does not authorize collateral attacks on civil judgments; litigants dissatisfied with their adversaries' tactics must protest to the tribunal at hand rather than start a fresh suit in federal court. So unless there is more to this complaint than appears to date, Fleury is barking up the wrong tree. The defendants' motion under Rule 12(b)(1) did not alert Fleury to the need to amend his complaint to avoid this fate--if that can be done consistently with FED.R.CIV.P. 11--so we leave further development to the parties and the district court.
 
 
 18
 REVERSED AND REMANDED.