879 F.2d 1424
 Joan Lynn CAIN, Plaintiff-Appellant,
v.
Bruce E. LARSON, Police Chief of the Village of Herscher,
Illinois, Police Department, Daniel Suess, Mayor of the
Village of Herscher, Illinois, and President of the Village
of Herscher, Illinois, Police Board, Arthur Brocksmith, Earl
Datweiler, James Feller, Steve Jacob, Merle Hendrix, and
Robert Mitchell, Individually and as Trustees of the Village
of Herscher, Illinois, Board, Defendants-Appellees.
 No. 88-3362.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 21, 1989.
Decided July 7, 1989.
 
 Stanley H. Jakala, Berwyn, Ill., for plaintiff-appellant.
 James K. Horstman, Thomas H. Neuckranz, Alfred A. Spitzzeri, Williams & Montgomery, Chicago, Ill., for defendants-appellees.
 Before CUDAHY, COFFEY and MANION, Circuit Judges.
 CUDAHY, Circuit Judge.
 
 
 1
 Cain, previously a probationary police officer for the Village of Herscher ("Herscher"), alleges that her former employer violated her fourteenth amendment procedural due process rights. She is suing for compensatory and punitive damages and costs pursuant to 42 U.S.C. section 1983. The district court granted defendants' motion to dismiss, and Cain appeals. Because the plaintiff has not alleged a constitutionally protected property interest, we affirm.I.
 
 
 2
 We review the dismissal of a complaint, and accordingly take all well-pleaded facts as true. Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Rankow v. First Chicago Corp., 870 F.2d 356 (7th Cir.1989). Cain's complaint alleges that while she was employed by the Herscher Police Department, Bruce Larson (Chief of the Herscher Police Department), with the support of Daniel Suess (Mayor and President of the Herscher Police Board), demanded that she work twenty hours of overtime per week without compensation. Cain claims that this demand, which she eventually refused, put a strain on her relationship with Larson. She was subsequently required to work five hours overtime per week.
 
 
 3
 Cain had previously informed Larson and Suess of difficulties she was having with one Daniel Diamond, who allegedly had a history of more than 125 arrests and more than 70 convictions (including two felony convictions). Diamond had been making phone calls and sending letters to Cain in which he threatened to harm or kill her. These threats had in part been responsible for an earlier decision by Cain to resign from the police department of another village where she had been employed. When Diamond at one point actually appeared in person at her former place of employment and at her residence, Cain had had him arrested and he received a 120-day sentence. After Cain moved and began work in Herscher, Diamond discovered her new whereabouts and began to harass her once more. On March 13, 1987, Diamond was arrested for public intoxication by the Kankakee County Sheriff's Department. Cain was apparently involved in the arrest, although the nature of her involvement is unclear from the complaint.
 
 
 4
 Following the arrest (from March 14 through 21, and again on March 23), Police Chief Larson interrogated Cain daily, without advising her that she was under investigation. Cain claims that these investigations furnished the basis for disciplinary charges subsequently filed against her by the Police Board. The disciplinary complaint read as follows:
 
 A. CRIMINAL CHARGES:
 
 5
 On March 13, 1987, it is alleged that Joan Lynn Cain committed the acts of official misconduct, battery, disorderly conduct, and assault or intimidation, while effecting the arrest of one Daniel D. Diamond, at approximately 12:10 P.M. in the Village of Herscher, Illinois.
 
 B. UNETHICAL CONDUCT BY A POLICE OFFICER:
 
 6
 Prior to and on March 13, 1987, Joan Lynn Cain advised her superior officer, members of the Illinois State Police, and members of the Kankakee County State's Attorney's office that the said Daniel D. Diamond made threatening telephone calls and mailed threatening letters, which allegations Sergeant Cain has failed to substantiate.
 
 
 7
 C. POOR WORK QUALITY (SUBSTANDARD) WORK HABITS:
 
 
 8
 Joan Lynn Cain's superior has documented a lack of initiative, poor job performance and the exercise of poor judgment by Joan Lynn Cain since employment as a Village Police Officer.
 
 
 9
 Complaint at p 21. Disciplinary hearings were then scheduled on April 2 and 14, 1987. Prior to the hearings, the Police Chief asked Cain to hand over the threatening letters she had received from Diamond; he then refused to return them when asked by Cain's attorney, who was preparing her defense for the hearings. Cain further complains that during the hearings Larson improperly introduced hearsay evidence and failed to substantiate charges (charges that he also allegedly failed to thoroughly investigate before the hearings). At the close of Larson's testimony at the hearings, the prosecutor agreed to dismiss the charges pertaining to "poor work quality," but retained the other charges. Cain resigned before the end of the hearings as a result of "the falsity of the charges and the denials of due process" that were occurring. Complaint at p 39.
 
 II.
 
 10
 Cain's complaint alleges that Larson's interrogation prior to the hearings, in combination with the subsequent hearings, violated due process rights secured to her by the Illinois "Uniform Peace Officers' Disciplinary Act" (the "Act"), the relevant sections of which provide:
 
 
 11
 p 2555.... No officer shall be subjected to interrogation without first being informed in writing of the nature of the investigation. If an administrative proceeding is instituted, the officer shall be informed beforehand of the names of all complainants. The information shall be sufficient as to reasonably apprise the officer of the nature of the investigation.
 
 
 12
 p 2560.... A complete record of any interrogation shall be made, and a complete transcript or copy shall be made available to the officer under investigation without charge and without undue delay.
 
 
 13
 p 2561.... No officer shall be interrogated without first being advised in writing that admissions made in the course of the interrogation may be used as evidence of misconduct or as the basis for charges seeking suspension, removal, or discharge; and without first being advised in writing that he or she has the right to counsel of his or her choosing who may be present to advise him or her at any stage of any interrogation.
 
 
 14
 p 2563.... Admissions or confessions obtained during the course of any interrogation not conducted in accordance with this Act may not be utilized in any subsequent disciplinary proceeding against the officer.
 
 
 15
 Ill.Rev.Stat. Ch. 85 paragraphs 2555, 2560, 2561. Cain contends that these provisions create a property right, for probationary and non-probationary officers alike, in a "blemish-free" employment record.
 
 
 16
 It is by now well-established that in order to demonstrate a property interest worthy of protection under the fourteenth amendment's due process clause, a party may not simply rely upon the procedural guarantees of state law or local ordinance. Bishop v. Wood, 426 U.S. 341, 345-47, 96 S.Ct. 2074, 2077-79, 48 L.Ed.2d 684 (1976); Farmer v. Lane, 864 F.2d 473, 478-80 (7th Cir.1988); Kasper v. Board of Election Comm'rs, 814 F.2d 332, 342 (7th Cir.1987); Gramenos v. Jewel Co., Inc., 797 F.2d 432, 434-35 (7th Cir.1986); Shango v. Jurich, 681 F.2d 1091, 1100 (7th Cir.1982). In order to give rise to a constitutionally protected property interest, a statute or ordinance must go beyond mere procedural guarantees to provide some substantive criteria limiting the state's discretion--as can be found, for example, in a requirement that employees be fired only "for cause."[1] If a statute or regulation merely delimits what procedures must be followed before an employee is fired, then it does not contain the requisite substantive predicate. Bishop, 426 U.S. at 347, 96 S.Ct. at 2079 (no property interest where "employee is merely given certain procedural rights"); Board of Regents v. Roth, 408 U.S. 564, 578, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972) (no property interest in renewed contract where no provision for "contract renewal absent 'sufficient cause' "); see also Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 11, 98 S.Ct. 1554, 1561, 56 L.Ed.2d 30 (1977) (property interest in continued service because public utility may not terminate service "at will," but "may terminate service only 'for cause' ").
 
 
 17
 Cain relies heavily upon a recent Seventh Circuit case, Fleury v. Clayton, 847 F.2d 1229 (7th Cir.1988), in her argument that more than mere procedural protections are at issue here. Fleury involved an Illinois statute regulating the manner in which physicians may be disciplined. Specifically, the statute provided that the Illinois Department of Registration and Education could take disciplinary action, such as revoking or suspending physicians' licenses, upon a number of grounds, including "gross or repeated malpractice," "unethical or unprofessional conduct," and "professional incompetence as manifested by poor standards of care." Ill.Rev.Stat. ch. 111 p 4433. This court held that the statute had created a property interest in "a blemish-free license to practice medicine." Fleury, 847 F.2d at 1232.
 
 
 18
 Cain argues by analogy that the protections provided by the Uniform Peace Officers' Disciplinary Act create a property interest in a "blemish-free" employment history for police officers at all levels. The problem with this contention is that none of the provisions to which Cain points provide the kind of substantive guidelines found in the statute in Fleury. The Act does not specify that officers may be disciplined only if they engage in certain kinds of conduct. Rather, it requires that, if officers are to be disciplined, certain procedures must be followed.
 
 
 19
 There is one substantive provision in the Act, which prohibits retaliatory actions:
 
 
 20
 No officer shall be discharged, disciplined, demoted, denied promotion or seniority, transferred, reassigned or otherwise discriminated against in regard to his or her employment, or be threatened with such treatment as retaliation for or by reason of his or her exercise of the rights granted by this Act.
 
 
 21
 Ill.Rev.Stat. ch. 85 p 2568. In this provision the Act goes beyond specifying procedures to be followed and provides a substantive guarantee--officers may not be discharged for engaging in a particular kind of conduct. However, Cain does not cite this provision, nor is there any evidence in the record to suggest that retaliation could have been an issue here; the actions of which Cain complains all occurred prior to her exercise of any rights guaranteed under the Act.[2] Thus the only applicable statutory provisions are procedural in nature, and Cain cannot rely on procedural guarantees in a state statute to assert a constitutionally-protected property interest.
 
 III.
 
 22
 Because the state statutory provisions upon which Cain relies grant only procedural and not substantive rights, she has failed to assert a constitutionally-protected interest sufficient to invoke the protection of the due process clause. The judgment of the district court is
 
 
 23
 AFFIRMED.
 
 
 
 [1]
 A similar "substantive predicate" requirement has been applied in the context of claimed liberty rights. Olim v. Wakinekona, 461 U.S. 238, 248-51, 103 S.Ct. 1741, 1747-49, 75 L.Ed.2d 813 (1983); Hewitt v. Helms, 459 U.S. 460, 471, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983). Indeed, the Supreme Court's analysis of substantive predicates sufficient to create liberty interests has been quite analogous to its analysis of substantive predicates such as "for cause" requirements in cases involving property interests. See Farmer v. Lane, 864 F.2d 473, 479 n. 4 (7th Cir.1988). However, the analogy should be pursued with caution, for the Court's approach to liberty interests has been somewhat broader than its analysis of property interests. See Hewitt, 459 U.S. at 466-67, 103 S.Ct. at 868-69; Ingraham v. Wright, 430 U.S. 651, 672-74, 97 S.Ct. 1401, 1413-14, 51 L.Ed.2d 711 (1977); see also Rubin, Due Process and the Administrative State, 72 Cal.L.Rev. 1044, 1076-78 (1984). Cain does not invoke a liberty interest in continued employment or reputation, and so we do not reach that issue
 
 
 [2]
 Further, Cain never reached the point of being "discharged, disciplined, demoted, denied promotion ... or otherwise discriminated against," because she herself resigned. Of course, if we were confronted with a case in which an officer had been so harassed in retaliation for her exercise of rights secured under the Act that she resigned, then it would be possible to make a "constructive discharge" argument. No such argument has been presented to us. Cain is essentially complaining that the conduct which violated the Act was carried out as punishment for her refusal to work overtime, not that some further retaliatory action was taken because she attempted to assert her rights under the Act. If retaliation were at issue, Cain might also be able to avail herself of the protections guaranteed by the first amendment