**John G. GRASSINGER, Jr., Plaintiff,**

v.

**John WELTY, M. Karen Deichert, and Indiana University of Pennsylvania, Defendants.**

**Civ. A. No. 88–2531.**

United States District Court, W.D. Pennsylvania.

July 9, 1992.

Judgment affirmed, —— F.2d ——.

Jon Pushinsky, Pittsburgh, PA.

Gloria Tischuk, Pittsburgh, PA.

### *MEMORANDUM ORDER*

D. BROOKS SMITH, District Judge.

Plaintiff, John G. Grassinger, Jr., filed a complaint in November, 1988, against defendants, alleging violations of his constitutional rights under color of state law, 42 U.S.C. § 1983, and of his right to be free from discrimination on the basis of gender in his employment, 42 U.S.C. § 2000e–5. In his third amended complaint, plaintiff advances eight separate counts. Before the court at this time are defendants' motion for summary judgment on all of the counts and plaintiff's motion for summary judgment on counts three and six. For the reasons stated below, defendant's motion is granted.

### I.

Federal Rule of Civil Procedure 56(c) requires the entry of summary judgment "'... if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' [T]he requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). (emphasis in original). A fact is "material" if proof of its existence or non-existence would affect the outcome of the lawsuit under the law applicable to the case. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Levendos v. Stern Entertainment, Inc.,* 860 F.2d 1227, 1233 (3d Cir.1988). An issue of material fact is "genuine" if the evidence is such that a reasonable jury might return a verdict for the non-moving party. *Anderson,* 477 U.S. at 257, 106 S.Ct. at 2515.

Once the defendants moving for summary judgment have satisfied their burden "by 'showing'—that is by pointing out to the district court—that there is an absence of evidence to support the non-moving party's case," *Celotex Corp. v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), the non-moving party is required to go beyond the pleadings by way of affidavits, depositions, answers to interrogatories, etc., in order to demonstrate specific material facts which give rise to a genuine issue.[1] *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

---

1. The motive or absence of motive of a party to engage in conduct alleged by another party is relevant to determining whether an issue of material fact exists. *Matsushita Electric Industrial*

## II.

Most of the relevant facts in this matter, and all of the material facts, are not in dispute. The parties strenuously argue differing legal conclusions from those facts, as will be noted.

The parties agree that Grassinger is a tenured associate professor at defendant Indiana University of Pennsylvania (IUP). Grassinger was first employed in 1970, and has worked since that time as a cataloger of books. He was granted tenure in the 1972–73 academic year. In 1985, IUP hired a new library director, Dr. Larry Kroah, and in 1986, IUP added Dr. Linda Rambler as an associate director, with supervisory responsibility for cataloging. Defendants' App. 1–2.

In April 1986, Lora Herrick, an employee in the library, sent a written complaint to Kroah alleging that Grassinger had sexually harassed her on April 14, 1986, and on "numerous occasions" in the previous one and a half years. Defendants' App. 53–54. Herrick provided a more detailed synopsis of her complaints in May, 1986. Defendants' App. 55–58.[2] The matter was referred to defendant M. Karen Deichert, then IUP's director of human resources.[3] On May 14, 1986, Deichert sent a letter to Grassinger notifying him of Herrick's complaints and stating that "you will be contacted in the near future to be provided with an opportunity to respond to the complaints." Defendants' App. 69–70. The letter also referred to complaints made by a student working in the library, Betsy Shepler, who had complained to Kroah in November, 1985. That complaint, Defendants' App. 52, had resulted in a memorandum by Kroah dated November 25, 1985. Defendants' App. 51.

Grassinger's response to Deichert's May 14, 1986 letter was to telephone Deichert and the assistant provost, Mark J. Staszkiewicz. From memos generated by Grassinger, Defendants' App. 72, and by Staszkiewicz, De-

fendants' App. 71, it appears that Grassinger vigorously denied Herrick's allegations. Additionally, on the same day, May 15, 1986, Grassinger filed a written complaint of sexual harassment against Herrick using an IUP internal grievance form. Defendants' App. 73–75.

Deichert apparently scheduled a meeting for June 5, 1986, to provide a hearing on Herrick's allegations referenced in the May 14, 1986 letter, but based on the request of an attorney representing Grassinger, the meeting was postponed. *See* Defendants' App. 80. An exchange of letters between IUP's counsel and Grassinger's attorney reflects negotiations to resolve Herrick's complaints by Grassinger accepting a letter in his personnel file stating that, while he did not admit to any wrongdoing, he would "refrain from the kinds of behaviors in the complaints that were brought against him." Defendants' App. 81–82 (IUP counsel's letter of June 9, 1986); Defendants' App. 83 (Grassinger's counsel's letter of June 12, 1986); Defendants' App. 85 (IUP counsel's letter of June 20, 1986). Based on this proposal, Deichert indefinitely postponed the June meeting. Defendants' App. 84.

Herrick brought a second complaint about Grassinger's behavior on June 20, 1986, alleging that Grassinger's behavior toward her was retaliatory and hostile. Defendants' App. 79. Thereafter, Deichert rescheduled a meeting for July 28, 1986, by a letter dated July 21, 1986. Defendants' App. 86. Prior to the meeting, the assistant provost received two letters, one from a woman who claimed Grassinger had harassed her, Defendants' App. 76–77, the other from a man who wrote to refute one of the allegations in Grassinger's complaint of harassment against Herrick. Defendants' App. 78. Deichert sent a letter to Grassinger on July 22, 1986, informing him of Herrick's additional allegations. Defendants' App. 87–88.

---

*Co. v. Zenith Radio Corp.,* 475 U.S. 574, 596, 106 S.Ct. 1348, 1361, 89 L.Ed.2d 538 (1986). Why any of the defendants have any motive to engage in the conduct alleged by plaintiff throughout the course of this litigation remains unexplained.

**2.** In September, 1986, Herrick filed a complaint with the Pennsylvania Human Relations Com-

mission. Defendants' App. 61–64. *See also* Defendants' App. 65–58 (amended PHRC complaint, March, 1988).

**3.** According to defendants, Deichert resigned from IUP in August, 1989. Defendants' Brief, 1.

A meeting was held on July 28, 1986, attended by Grassinger with both a union representative and private counsel, by the Provost, Hilda Richards, by Dr. Kroah, by Deichert, and by IUP's counsel. *See* Defendants' App. 141. After the meeting, Deichert gave Grassinger's counsel a note received from Herrick written by Grassinger which reads:

Laura (sic),

> Mr. "Boom Boom" G gives free welding lessons—by appointment. I emphasize "hands on" experience.
>
> JG

It is noteworthy that one of Grassinger's complaints in his charge of harassment filed against Herrick subsequent to her complaint was that she harassed him by referring to him as "Boom–Boom." Defendants' App. 74. Also at the meeting, Grassinger's counsel disclosed that Grassinger claimed that he had received anonymous threatening letters. *See* Defendants' App. 89.

After the July 28, 1986 meeting, Grassinger and IUP again attempted to negotiate a non-adjudicatory settlement of Herrick's complaints. *See* Defendants' App. 107–08. Also, during July, 1986, Herrick's union requested that Grassinger be reassigned to another location. Defendants' App. 91. IUP declined. Defendants' App. 93. Throughout August, Deichert communicated with Herrick's union, Defendants' App. 94, while IUP's counsel dealt with Grassinger's counsel, Defendants' App. 92, who complained that the welding lesson note from Grassinger to Herrick had an innocent explanation. Defendants' App. 94–95.

On August 28, 1986, Grassinger's counsel turned over the anonymous threatening letters that Grassinger said he had received. *See* Defendants' App. 97–105. IUP's counsel responded on September 9, 1986 to Grassinger's counsel, Defendants' App. 107–08, and turned the letters over to Deichert recommending a criminal investigation. Defendants' App. 106.[4] IUP's counsel also informed Grassinger's counsel that Deichert was continuing her investigation into complaints about Grassinger's behavior. Defen-

dants' App. 108. On September 19, 1986, Herrick filed her first complaint with the PHRC. Defendants' App. 61–64.

In October and November of 1986, Deichert interviewed 33 faculty and staff members from the library, in the presence of representatives from Grassinger's union, APSCUF, and Herrick's union, AFSCME. Defendants' App. 113. Seventeen of the employees made reported comments about Grassinger, ranging from trivial to disturbing. Most of the remarks suggest a general inability of Grassinger to get along peacefully with co-workers, but some suggest behavior which could be construed as sexual harassment. Defendants' App. 114–124. It appears that Grassinger knew at this time of the investigation. *See* Defendants' App. 125.

Also, on November 3, 1986, Grassinger filed a criminal complaint with the Indiana University police accusing Herrick of harassment by sending the anonymous letters. The next day, Herrick was interviewed and gave handwriting samples. On November 5, 1986 Grassinger submitted handwriting samples as well. On November 21, 1986, the IUP police received a report from a documents examiner from the state police crime lab in Greensburg that indicated the handwriting analysis was inconclusive. Defendants' App. 149–150. The criminal investigation was closed.

In December, 1986, Deichert notified Grassinger of the completion of her investigation and attempted to schedule an informal meeting with Grassinger and his representatives. Defendants' App. 137–38. Grassinger requested more information in a telephone call to Deichert on December 4, 1986. *See* Defendants' App. 139. Deichert informed him of the nature of the investigation and also informed Grassinger that she had dismissed his internal complaint of harassment against Herrick as insufficient. Defendants' App. 139–140. Deichert advised Grassinger that she would wait to hear from him until January 6, 1987, after which time she would proceed formally with the results of her investi-

---

4. IUP's counsel also recommended an investigation of the letters by the Attorney General's Office, Defendants' App. 109–110, which was decided against by the State System of Higher Education's chief legal counsel. Defendants' App. 111.

gation. In his deposition, Grassinger admitted refusing to meet with Deichert. Plaintiff's App. 132–136.

On February 6, 1987, defendant John D. Welty, then president of IUP,[5] suspended Grassinger without pay for 10 days beginning February 9, 1987. Defendants' App. 141–43. Welty stated that his basis for the suspension was the allegation by Herrick of retaliation. Defendants' App. 142. Welty specifically noted the further investigation by Deichert and stated that he was reserving judgment on those matters "until you are provided with the details and have an opportunity to respond." Defendants' App. 142. After intercession by Grassinger's union, Welty stayed the suspension on February 12, 1987, Defendants' App. 144, and scheduled a meeting with Grassinger and his union representative for February 17, 1987. *See* Defendants' App. 145. After the meeting, Welty reinstated the suspension. Defendants' App. 146.

In March, 1987, Grassinger filed a complaint with the PHRC alleging that Deichert's dismissal of his discrimination complaint against Herrick and her investigation of the charges against him were actions discriminatorily based on his gender. Defendants' App. 151–54. In response, IUP undertook an investigation of two of Grassinger's less trivial complaints. Dr. Rambler reviewed Grassinger's allegation that he was receiving an unusually large number of books with sexual themes for cataloging. Defendants' App. 155–86. Kroah questioned the library staff about Grassinger's complaints of Herrick's physical proximity. Defendants' App. 187–207. *See also* Defendants' App. 208–09 (IUP Answer to PHRC Complaint).

On May 7, 1987, Deichert sent another notice to Grassinger of charges of sexual harassment. Defendants' App. 210–12, and scheduled a meeting for May 15, 1987. (The behavior complained of had nothing to do with sexual harassment, but all of the complainants were women). Grassinger did not meet with Deichert, but did file a grievance over the issuance of the letter, which was denied. Defendants' App. 224. Also, during this time period, Grassinger's union pursued a grievance of the ten day suspension imposed in February, 1987, by Welty, which eventually resulted in a settlement in January, 1988.[6] *See* Defendants' App. 225–226. The settlement, which called for a reprimand letter to be placed in Grassinger's personnel file, Defendants' App. 227, was not formally agreed to by Grassinger, although Grassinger apparently did accept reimbursement of his wages for the suspension period. Defendants' App. 228. *See also* Defendants' App. 234–36. In March, 1988 Herrick filed her second complaint with the PHRC, alleging retaliation by Grassinger. App. 65–68. *See also* Defendants' App. 237–39. In January and February, 1988, Grassinger had sent memoranda to Rambler requesting investigation of his complaints of doors being slammed and mail being misdelivered. Defendants' App. 231–33. Although the tone of the memoranda could be variously characterized, the memoranda contained an explicit threat to sue Rambler personally. Also in April, 1988, Grassinger complained of receiving hang-up calls and requested a phone tap on his line. Defendants' App. 240. In response to the threat to sue Rambler and allegations by Herrick, Welty sent Grassinger a letter on April 11, 1988, notifying him of the charges by his co-workers and scheduling a hearing for April 26, 1988. Defendants' App. 241–243.

Also during the spring of 1988, Grassinger was undergoing his 5–year evaluation under the collective bargaining agreement. Rambler, as Grassinger's supervisor, had sent a memorandum critical of Grassinger's work to him on April 11, 1988. Defendants' App. 244–45. An evaluation of Grassinger by the library's Professional Development and Evaluation committee, carried out by Grassinger's colleagues on April 21, 1988, also showed numerous unsatisfactory ratings of Grassinger's work. Defendants' App. 32. Additionally, Kroah's evaluation as director of the library mentioned both personal conflicts and professional deficiencies, and recommended

---

**5.** Defendant Welty is currently president of the University of California at Fresno.

**6.** The settlement encompassed other unrelated disciplinary matters as well. *See* Defendants' App. 229–30.

an interim evaluation. Defendants' App. 30–31. Through his union representative, Grassinger requested additional information about the allegations of professional deficiencies. Defendants' App. 259. Grassinger also filed a grievance over the evaluation. Defendants' App. 319–26. This was denied. Defendants' App. 323.

The sexual harassment charges against Grassinger continued to remain pending through 1988. Additional charges of professional shortcomings[7] were leveled against Grassinger, Defendants' App. 267–76, and were met by formal grievances, Defendants' App. 285, 289, 290. In November of 1988, Grassinger filed his first complaint in federal court. Thereafter, his grievances included accusations that complaints about his conduct and attempts to evaluate his professional development were in retaliation for his civil action. Defendants' App. 285, 289, 290, 292. Also in November, 1988, Welty officially reprimanded Grassinger over the incidents described in Welty's April 11, 1988 letter. Defendants' App. 338. This led to a grievance by Grassinger as well. Defendants' App. 337. Grassinger had previously written to Welty concerning those charges. Defendants' App. 339–41.

At the end of December, 1988, Kroah determined that the interim evaluation he had recommended in May, 1988, Defendants' App. 30–31, would be required of Grassinger. Defendants' App. 291. Grassinger wrote to Kroah charging him with bad faith and harassment, Defendants' App. 292, and filed a grievance. Defendants' App. 297. The interim evaluation by the Professional Development and Evaluation Committee on March 28, 1989, indicated that Grassinger's colleagues perceived Grassinger's work as generally unsatisfactory. Defendants' App. 44–47, 297.[8] Kroah's evaluation as director of the library was unfavorable as well. Defendants' App. 39–43. Grassinger grieved this

evaluation also. Defendants' App. 297. The grievance was denied.

Following the March, 1989 grievance, Welty wrote to Grassinger on June 16, 1989, informing him that his employment at IUP was in jeopardy, listing the 1988 5–year and 1989 interim evaluations as bases for his concern, and requesting that Grassinger respond to the letter on or before June 30, 1989. Defendants' App. 302. Grassinger responded by memorandum on June 30, 1989, accusing Welty of intimidation, bad faith, harassment, repeated civil rights violations, and arbitrary and capricious actions. Grassinger stated that he looked "forward to presenting my case, to twelve overburdened Pennsylvania taxpayers in Federal District Court," and referred all further inquiries to his counsel. Defendants' App. 303–04. Welty attempted to schedule a meeting with Grassinger's union representative, Defendants' App. 306, but this was declined. Defendants' App. 307. By letter of July 31, 1989, Welty notified Grassinger's union, with a copy to Grassinger, that he intended to proceed with his determination. Defendants' App. 308. Welty followed this with a letter to Grassinger on August 4, 1989, in which he stated that his determination concerning Grassinger's continued employment would probably result in Grassinger's termination on September 1, 1989, unless Grassinger responded by August 25, 1989, "with an earnest statement of contrition and a satisfactory plan for improvement." Defendants' App. 309–311. Some discussion with the union ensued concerning a possible transfer of Grassinger to another college within the state system, Defendants' App. 312, and the August 25 deadline was extended into September.

Grassinger responded to Welty's August 4, 1989 letter on September 11, 1989. Defendants' App. 315–16. Grassinger criticized his 1989 interim evaluation as improper and his 1988 5–year evaluation as biased, and chal-

7. Particularly, at a meeting held on September 23, 1988, members of the IUP library administration reported what can only be described as childish behavior by Grassinger. Defendants' App. 277–78. The behavior led to a reprimand, Defendants' App. 280, and a responsive grievance by Grassinger. Defendants' App. 285, 289.

8. The Committee was composed of one person on the April 1988 Committee, Daniel Shively, and four new members. Grassinger did not attend the evaluation. Defendants' App. 296.

lenged the administrators who had "cast aspersions on [his] mental state" to undergo psychiatric evaluation themselves. *Id.*

On September 22, 1989, Welty terminated Grassinger's employment, and notified him of his right to grieve the discharge under the collective bargaining agreement. Defendants' App. 317. Grassinger did grieve the discharge, Defendants' App. 367–68, and his pay and benefits were continued for 90 days pursuant to university policy. Defendants' App. 318.

After his termination, Grassinger applied for unemployment compensation. A contested hearing was held before a referee on December 13, 1989, who found that Grassinger was ineligible for benefits because he was receiving benefits from the university, but that Grassinger had not been guilty of willful misconduct under the state unemployment compensation law. Grassinger appealed the decision to the Unemployment Compensation Board of Review which reversed the referee's decision on the eligibility issue and awarded benefits. Plaintiff's App. 1–5. No further appeal of the unemployment compensation award was taken. In May, 1991, an arbitrator appointed under the terms of the collective bargaining agreement heard the numerous grievances relating to Grassinger's evaluations and discharge and concluded that IUP's decision to discharge Grassinger "might well find approval" but for the mitigating effect of Grassinger's previous "15 years of satisfactory service." The arbitrator reinstated Grassinger without back pay, treating the period Grassinger had been out of work as a disciplinary suspension. Defendants' App. 1–9.

### III.

#### A.

In count I of the Third Amended Complaint, Grassinger complains that defendants Deichert and Welty violated his right to procedural due process under color of state law by failing to follow the grievance procedure outlined in IUP's Sexual Harassment Policy Statement and Grievance Procedure, Plaintiff's App. 22–24, in investigating the complaints of sexual harassment brought by Herrick. The defendants raise a number of grounds in support of their motion for summary judgment, but it is only necessary to discuss one in granting summary judgment on this count. In order for plaintiff to have a viable claim for violation of procedural due process, he must be denied some substantively protected property or liberty interest. *See Bishop v. Wood,* 426 U.S. 341, 347, 96 S.Ct. 2074, 2078, 48 L.Ed.2d 684 (1976). *See also Clark v. Township of Falls,* 890 F.2d 611, 620 n. 4 (3d Cir.1989) (there is neither a liberty or property interest in procedures themselves); *Fleury v. Clayton,* 847 F.2d 1229, 1231 (7th Cir.1988) (same); *Brandon v. District of Columbia Board of Pardon and Parole,* 823 F.2d 644 (D.C.Cir.1987). Nor is this a case in which the state policy confers a substantive right, *see Stana v. School District of City of Pittsburgh,* 775 F.2d 122 (3d Cir.1985), because state administrative policies generally do not, under state law, confer entitlements. *See e.g. Pivarnik v. Commonwealth, Department of Transportation,* 82 Pa.Cmwlth. 42, 474 A.2d 732 (1984). It is further impossible to characterize the precatory and hortatory language of this particular policy statement as conferring property or liberty interests. Even assuming defendants' violation of their own regulations, at most there is a violation of state procedural law which this Court has no basis for reaching. *See Pennhurst State School & Hospital v. Haldeman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). *Cf. Marshall v. Lansing,* 839 F.2d 933, 943 (3d Cir.1988) (federal agency must under due process clause follow internal regulations that have "the force of law").

#### B.

In Count II, Grassinger complains that defendant Welty violated his due process rights by suspending him on February 6, 1987, effective February 9, 1987, contrary to the procedures of the university's sexual harassment policy. As with count I, plaintiff's claim of a due process violation due simply to an alleged lack of adherence to internal university regulations fails as a matter of law because of a lack of a constitutionally protected liberty or property interest.

As will be discussed in connection with count III, in part III.C. below, plaintiff's claim also founders as a matter of fact because he was provided with a hearing.

## C.

Count III charges defendant Welty with violating Grassinger's right to procedural due process by suspending him on February 6, 1987, without a hearing. The suspension was later settled by the negotiated issuance of a letter reprimanding Grassinger, and Grassinger accepted backpay for the suspension. However, the existence of a procedural due process violation is established at the time of the suspension. *Bradley v. Pittsburgh Board of Education,* 913 F.2d 1064, 1078 (3d Cir.1990). The parties agree that, as a tenured employee, Grassinger had a property interest in his job and could be suspended only after notice and an opportunity to be heard. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

As a matter of undisputed fact, however, Grassinger was given notice of the potential grounds for his suspension, through Deichert's letter of May 14, 1986, and Deichert's letter of July 22, 1986. Also as a matter of undisputed fact, Grassinger was afforded a hearing on July 28, 1986. Welty's letter of February 6, 1987, suspending Grassinger expressly refers to these events, and expressly states that the subsequent allegations made in the investigation by Deichert in October and November, 1986, were not being considered. Grassinger received all the process he was due under the constitution. Grassinger's sole argument relies on the undisputed but immaterial fact that on February 6, 1987, Grassinger had not yet received a hearing on the second set of harassment charges for which he was not being disciplined. The due process clause cannot be construed as preventing any further investigations by the university of complaints against Grassinger until the first complaint against Grassinger was fully litigated.

## D.

Count IV combines claims by Grassinger that Welty violated the university's sexual harassment policy, procedural due process, and substantive due process in the settlement of the grievance over the ten-day suspension by placing the letter dated February 17, 1987, into Grassinger's disciplinary file. As stated in connection with count I and count II, even assuming a violation of the university's harassment policy, no constitutional claim is stated. Grassinger's additional claims that he was denied procedural and substantive due process because the letter is "stigmatizing" and was issued without a hearing fails to meet the threshold requirement of stating the deprivation of a constitutionally protected interest. In *Siegert v. Gilley,* —— U.S. ——, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991), the Supreme Court confronted and expressly rejected the "defamation plus stigmatization" theory used after *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), to state a federal claim in cases where an employer made adverse statements about an employee. *See e.g. Doe v. United States Department of Justice,* 753 F.2d 1092, 1104–06 (D.C.Cir.1985). The Court held in *Siegert* that even where a plaintiff alleged collateral harmful effects on employment or prospects of employment, a claim based on adverse statements by an employer "may be recoverable under state tort law but it is not recoverable in a *Bivens* action." 111 S.Ct. at 179. Again, plaintiffs' claim fails at the initial step of identifying a federally protected property interest.[9]

## E.

Count V claims that defendant Welty violated the equal protection clause, procedural due process, and substantive due process by harassing Grassinger in retaliation for asserting his constitutional rights. The cause of action asserted in this count is an attempt to assert against defendant Welty personally claims that are brought against IUP under Title VII in count VIII. *See* part III.H. The factual inadequacy of Grassing-

---

9. Plaintiffs' claim also would fail as a matter of fact even under *Doe* because Grassinger has shown nothing to indicate that the letter has had

any effect on his prospects for employment or on his continued employment at IUP.

er's account is discussed in that section. More fundamentally, I believe that plaintiff brings his claims under the wrong legal rubric. Grassinger's assertions, directly under the constitution, that IUP retaliated against him for asserting his constitutional rights and for complaining that the university was not following its internal grievance procedures implicate the *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), and *Mt. Healthy City Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) line of cases, not the independent constitutional protections afforded by procedural due process, *see* part III.C., substantive due process, *see* part III.D., and equal protection, *see* part III.G. In order to bring a valid prima facie cause of action for retaliation against him for exercising his constitutional rights, Grassinger must show that his protected conduct was a substantial or motivating factor in Welty's imposition of discipline toward him. Assuming that Grassinger can do so, Welty is then obliged to show that there is no issue of material fact that he would have taken the same action even in the absence of protected conduct. *See Bradley v. Pittsburgh Board of Education,* 913 F.2d at 1074–75. Of course, since Welty is being sued in his personal capacity,[10] he also is entitled to the defense of qualified immunity.

■ Plaintiff fails to meet his initial burden of setting forth evidence that any protected activity was a substantial factor in any action (other than termination, which is the subject of the claim brought in count VI, *see* part III.F.) taken by Welty. First, it is necessary to identify what the protected activity is. *Compare Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), *with Rankin v. McPherson,* 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987). It is clear that Grassinger's frequent complaints about the university's procedures, employees, and policies would not qualify as protected speech even in a state common law wrongful discharge action. *Rossi v. Pennsylvania State University,* 340 Pa.Super. 39,

489 A.2d 828, 833–36 (1985). Under federal law, Grassinger's complaints are quintessentially matters of personal concern not protected by the constitution. *See Connick v. Myers,* 461 U.S. at 148–149, 103 S.Ct. at 1691–92.

■ Grassinger's filing of a lawsuit, or of formal complaints of sexual harassment with the university or with government administrative agencies, are protected activities. Plaintiff makes no showing, however, that any such actions by him caused any perceptible change in Welty's conduct. Grassinger cites only two examples of retaliatory conduct, the issuance by Welty of the letter of June 16, 1987, and the letter of August 4, 1989, which he claims shows that the "harassment [by Welty] intensified after initiation of this action." Plaintiff's Brief, 12. First, it is overstating the matter markedly to call the issuance of two confidential letters "harassment," and the relevant portion of Grassinger's deposition, Plaintiff's App. 155–56, 160–63, refutes any claim that he suffered any legally cognizable harm as a result of their issuance, unless an employer is simply barred from any communication with an employee engaged in litigation. Second, despite Grassinger's characterization, there is simply nothing to show "intensified" conduct of any kind by Welty, or that his conduct in the summer of 1989 was in some way a response to the filing of this suit in the fall of 1988, rather than a response to the faculty evaluation by the Professional Development Committee. With respect to Grassinger's filing of a sexual harassment complaint against Herrick with IUP in May, 1986, and filing of a complaint with the PHRC in March, 1987, the amount of time which lapsed before Welty allegedly engaged in retaliation completely negates any inference of causation. *See generally Quiroga v. Hasbro, Inc.,* 934 F.2d 497, 501 (3d Cir.1991) (even where events are close in time, inference of causation cannot be drawn from timing alone). It is not even necessary to reach the issues of qualified immunity or the defense that Welty would have taken the same action in the absence of Grassinger's litigation.

10. The Eleventh Amendment bars assertion of these claims, except under Title VII, against Wel-

ty in his official capacity as president of IUP.

F.

■ In Count VI, Grassinger complains that his termination in September, 1989, by Welty violated both substantive and procedural due process. Grassinger's substantive due process claim is based on an interpretation of remarks in the Supreme Court's *per curiam* decision in *Harrah Independent School District v. Martin*, 440 U.S. 194, 99 S.Ct. 1062, 59 L.Ed.2d 248 (1979), that suggest that all state action must meet a minimal rationality test. *See also Regents of University of Michigan v. Ewing*, 474 U.S. 214, 222–23, 106 S.Ct. 507, 511–12, 88 L.Ed.2d 523 (1985) (assuming arguendo a federal substantive right to freedom from arbitrary state action). Grassinger asserts that because the personnel action taken by Welty was erroneous, it was "arbitrary and capricious" and therefore violated the substantive element of the due process clause. His argument confuses the issues of correctness and constitutionality. Regardless of the correctness of the charges upon which Welty based the termination, Welty's action would violate substantive due process only if action was taken despite a complete lack of foundation, or if the charges which were the basis of the termination have no rational relationship to a permissible concern of the university administration. As to the lack of foundation argument, whether or not Herrick's complaints of harassment would be credited by every factfinder, the undisputed fact that Herrick did complain, and came forward with evidence, provided some basis for the University's actions. With respect to the rational relationship to a permissible end, it is beyond peradventure that universities have a legal duty, not merely a permissible interest, in curbing sexual harassment, not only in its role as an employer, but also in its community. *See Franklin v. Gwinnett County Public Schools*, —— U.S. ——, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992) (Title IX). The substantive due process claim fails even to state a legally sufficient claim.[11]

■ Grassinger's procedural due process claim, as with count III, requires some evidence from which a jury could conclude that Grassinger was denied either notice or opportunity to respond to the allegations on which Welty based his termination. Welty's June 16, 1989 and August 4, 1989, letters indisputably gave Grassinger notice, and offered him an opportunity to respond. Grassinger did respond by letters on June 30, 1989 and September 11, 1989. Grassinger advances two arguments, however, why that fails to satisfy the requisites of due process. First, Grassinger contends that he is entitled to a hearing, not just an opportunity to respond, as a matter of constitutional law. This assumption is incorrect. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985). Further, even if a hearing were constitutionally required, as a matter of undisputed fact Grassinger, based on this suit, refused "any discussion or delineation of the issues you raise," Defendants' App. 303, in his June 30, 1988 letter, and in his September 11, 1989 letter suggested only polygraphic and psychiatric evaluation of the sources of Welty's information. Even when there is a requirement of a hearing, it may be waived or bypassed by a party.

11. Plaintiff's cross motion for summary judgment on counts III and VI, which asserts the preclusive effect of the award of unemployment compensation on the issue of defendants' violation of substantive due process, is summarily denied. Even ignoring its lack of factual merits, it is based on a gross overgeneralization of the holding of *Frederick v. American Hardware Supply Co.*, 384 Pa.Super. 72, 557 A.2d 779, *allocatur denied*, 523 Pa. 636, 565 A.2d 445 (1989), which was that an employee found guilty of willful misconduct at a judicially reviewed administrative proceeding was precluded from relitigation of the propriety of the discharge in a wrongful discharge action. 557 A.2d at 1781. *See also Odgers v. Commonwealth, Unemployment Compensation Board of Review*, 514 Pa. 378, 525 A.2d 359 (1987). In *State Police v. Unemployment Compensation Board of Review*, 135 Pa. Cmwlth. 71, 578 A.2d 1360, 1361 (1990), the Commonwealth Court noted the well settled difference between the issues relevant to discharge and to award of benefits. Issue preclusion could never be applied offensively by a successful unemployment benefits claimant under *State Police v. UCBR*, because of the discrete and narrow scope of the unemployment benefits hearing. Finally, even if issue preclusion under Pennsylvania law could be applied in some appropriate case, the Board of Review in this matter expressly stated that "the Board in no way questions the employer's right to discharge the claimant." Plaintiff's App. 2.

■ Second, Grassinger asserts that he could not respond at all to Welty's charges without jeopardizing his federal litigation. Grassinger's counsel even asserts, Plaintiff's Brief at 21 n. 22:

> There has been some suggestion that Defendant Welty's insistence on an apology during the course of litigation may have amounted to an obstruction of justice and a criminal interference of (sic) Mr. Grassinger's civil rights.

This is ludicrous. To hold that a litigant is somehow shielded from the process of investigation, factfinding, and discipline in the workplace by his status as litigant would be a radical departure from an unbroken line of cases which hold that there is no immunity from the civil consequences of failing to respond to investigatory processes even where the Fifth Amendment is implicated. I discussed this very issue at length in *Aetna Casualty & Surety Co. v. State Farm Mutual Automobile Insurance Co.,* 771 F.Supp. 704 (W.D.Pa.1991) *aff'd w/o op.,* 961 F.2d 207 (3d Cir.1992). More to the point, the Court of Appeals foreclosed use of the pendency of litigation as a shield from the consequences of an employee's tactical decisions in *Peiffer v. Lebanon School District,* 848 F.2d 44 (3d Cir.1988).

### G.

■ Count VII accuses Welty, Deichert, and IUP of violating Title VII by operating a two-tier disciplinary system under which only complaints of sexual harassment by women would be seriously investigated, and by permitting a sexually hostile environment.

Grassinger's claims of a sexually hostile environment are not even worthy of discussion other than to note their inadequacy to show a "pervasive" atmosphere of harassment. *See Andrews v. City of Philadelphia,* 895 F.2d 1469 (3d Cir.1990).

Even assuming application of the *McDonnell Douglas–Burdine* burden shifting framework to a member of the nonprotected class, Grassinger's evidence in support of a prima facie case that the university handled complaints by women differently than complaints

by men reduces to the single comparison of the dismissal of his complaint against Herrick to the imposition of some disciplinary sanction against him due to the complaint by Herrick. There is no pattern of circumstantial evidence from which any discriminatory intent could be inferred. With respect to the single comparison advanced, "[d]ifferent disciplinary measures taken in response to different acts," *Miller v. Yellow Freight Systems, Inc.,* 758 F.Supp. 1074, 1079 (W.D.Pa.), *aff'd w/o op.* 941 F.2d 1202 (3d Cir.1991), do not constitute the disparate treatment necessary to show a prima facie case of discrimination. *See Bellissimo v. Westinghouse Electric Corp.,* 764 F.2d 175, 180 (3d Cir.1985) ("A discharge is not per se disparate treatment. It violates Title VII's commands only if it is made on a basis that would not result in the discharge of a male employee"). In the instant case, there is nothing to suggest that Grassinger's less than coincidentally timed charge of harassment against Herrick would not have received the same short shrift it did even if Grassinger were female.[12]

### H.

■ The last count, count VIII of the Third Amended Complaint, charges IUP with violating Title VII by retaliating against Grassinger for pursuing a Title VII claim. Plaintiff must show some evidence from which a finder of fact could rationally conclude that (1) the plaintiff reasonably believed that the employer was engaged in an employment practice unlawful under Title VII; and (2) that the employer retaliated against the plaintiff for protesting against that practice. *Drinkwater v. Union Carbide Corp.,* 904 F.2d 853, 865 (3d Cir.1990); *Hicks v. Abt Associates, Inc.,* 572 F.2d 960, 967–69 (3d Cir.1978). Plaintiff has shown neither an issue of material fact concerning his reasonable belief that IUP was violating Title VII, nor an issue that any evaluation or discipline attempted by an employee of IUP was in retaliation for his protected activity.

First, plaintiff had no reasonable belief at the time of his complaint to the IUP adminis-

---

12. And as stated above, there is no factual basis for the allegation that the University did not pursue the complaint by Grassinger concerning the anonymous threatening letters.

tration concerning Herrick or at the time of his complaint to the PHRC that IUP was engaged in discrimination. As discussed in part III.G above, plaintiff cites only the dismissal of his claim of harassment by Herrick as evidence of gender-based discrimination against him. Any subjective belief by Grassinger based on this incident hardly qualifies as reasonable. Second, there is not even a motive advanced for the claim that because Grassinger's colleagues (other than Welty, discussed in part III.E above) may have discovered that Grassinger had filed a sexual harassment complaint against Herrick, or a Title VII claim against the university, they would have reacted falsely evaluating Grassinger as low as they did.

Summary judgment on all counts is entered in favor of the defendants. The Clerk shall mark this matter closed.